JOAN STRZELCZYK *et al.*, Plaintiffs-Appellants, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellee.

First District (5th Division)   No. 85—0901

Opinion filed November 15, 1985.

Joan Strzelczyk, of Chicago, *pro se* and for appellants.

Taylor, Miller, Sprowl, Hoffnagle & Merletti, of Chicago (Roger LeRoy, of counsel), for appellee.

JUSTICE SULLIVAN delivered the opinion of the court:

This appeal is from a summary judgment for defendant in a declaratory judgment action brought by plaintiffs to recover medical payment benefits under certain policies of automobile insurance issued by defendant.

Plaintiffs, Joan Strzelczyk and her parents, Raymond and Ann Strzelczyk, filed a five-count complaint seeking a declaration that they are entitled to collect medical payments benefits under two separate automobile insurance policies issued by defendant to Joan and Raymond, an award of damages, and attorney fees.

The facts giving rise to this litigation are largely undisputed. On March 1, 1982, Joan and Ann sustained bodily injuries while riding on a bus owned by the Chicago Transit Authority (CTA), which carried no medical payment insurance coverage for persons so injured while passengers on its buses. Joan filed a claim, as the named insured, for $4,022.76 under the medical payments coverage section of her policy, and a claim was filed on Ann's behalf as the spouse of a named insured, for $633.46 under the same section of the separate policy issued to Raymond. Both policies contained identical medical payments coverage provisions which provided, in relevant part, that defendant agreed to pay reasonable medical expenses, up to $25,000, for services furnished as a result of accidental bodily injury sustained by the named insured, his or her spouse or their relatives—defined as persons related to the named insured who live in the same household therewith—while occupying a nonowned car.

After payment of the original claims, Joan submitted a second claim for $4,022.86 as a relative under Raymond's policy. Similarly, a second claim for $633.46 was filed by Ann as a relative under Joan's policy. Although there was no dispute that Joan and Ann qualified as relatives under the terms of those policies, defendant denied the claims on the basis of its prior payment to them of the medical expenses benefits sought, and plaintiffs then instituted this action. The parties filed cross-motions for summary judgment, and after hearings thereon the trial court entered judgment for defendant. This appeal followed.

OPINION

Plaintiffs contend that the trial court erred in ruling that they are limited to a single recovery of medical payments benefits, arguing that since they qualify for such coverage under two separate contracts of insurance, for which two separate premiums were paid, they are entitled to recover under both.

Defendant argues, as it did in the trial court, that (1) by virtue of its payment to Joan and Ann on their initial claims, an "excess clause" contained in each policy was then activated, precluding further recovery by either of them and (2) in any event, under Illinois law, it is obligated only to indemnify plaintiffs for actual medical expenses incurred as a result of the accident and not to provide double indemnity.

■ As a preliminary matter, plaintiffs assert that under section 2—613(d) of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—613(d)), defendant's failure to raise the applicability of the excess clause as an affirmative defense until the filing of its motion for summary judgment resulted in a waiver thereof. While it is true that section 2—613(d) provides that "the facts constituting any affirmative defense *** must be plainly set forth in the answer" (Ill. Rev. Stat. 1983, ch. 110, par. 2—613(d)), numerous cases have held that since Illinois law permits a defendant to file a motion for summary judgment at any time—even before an answer—an affirmative defense raised in such a motion is timely and may be considered, even though not raised in defendant's answer. *Chaplin v. Geiser* (1979), 79 Ill. App. 3d 435, 398 N.E.2d 628; *Florsheim v. Travelers Indemnity Co.* (1979), 75 Ill. App. 3d 298, 393 N.E.2d 1223; *Schultz v. American National Bank & Trust Co.* (1976), 40 Ill. App. 3d 800, 352 N.E.2d 310.

■ Turning then to the substance of the parties' contentions, we note that the general rules governing the interpretation of contracts of insurance do not differ from those controlling in other contract cases (*Jensen v. New Amsterdam Insurance Co.* (1965), 65 Ill. App. 2d 407, 213 N.E.2d 141). When construing an insurance policy, the court's primary concern is to give effect to the intent of the parties as expressed by the contract (*State Farm Mutual Automobile Insurance Co. v. Schmitt* (1981), 94 Ill. App. 3d 1062, 419 N.E.2d 601). In so doing, words are to be given their plain and ordinary meaning (*Rivota v. Kaplan* (1977), 49 Ill. App. 3d 910, 364 N.E.2d 337), and where a clause is clear and unambiguous, it will be applied as written unless it otherwise contravenes public policy (*Menke v. Country Mutual Insurance Co.* (1980), 78 Ill. 2d 420, 401 N.E.2d 539). However, ambiguous provisions must be construed in favor of the insured and

against the insurer (*Menke v. Country Mutual Insurance Co.* (1980), 78 Ill. 2d 420, 401 N.E.2d 539; *Squire v. Economy Fire & Casualty Co.* (1977), 69 Ill. 2d 167, 370 N.E.2d 1044), the underlying rationale for which is that contracts of insurance do not result from negotiation but are drafted by the insurer and submitted to the prospective insured for acceptance without change (*State Farm Mutual Automobile Insurance Co. v. Schmitt* (1981), 94 Ill. App. 3d 1062, 419 N.E.2d 601); and in determining whether there is an ambiguity, the clause must be read in its factual context, not in isolation (*Menke v. Country Mutual Insurance Co.* (1980), 78 Ill. 2d 420, 401 N.E.2d 539; *Glidden v. Farmers Automobile Insurance Association* (1974), 57 Ill. 2d 330, 312 N.E.2d 247). Finally, where an insurer attempts to limit liability by excluding coverage under certain circumstances, it has the burden of showing that the claim falls within the exclusion relied upon since it is presumed that the insured intended to obtain coverage and that the insurer would have stated any such exclusions clearly and specifically. *State Farm Fire & Casualty Co. v. Moore* (1981), 103 Ill. App. 3d 250, 430 N.E.2d 641.

■■ In the case at bar, the "excess clauses" raised by defendant as a bar to plaintiffs' claims for recovery under both policies are identical. Each provides:

> "If a temporary substitute car, a non-owned car, or a trailer has other vehicle medical payments coverage on it, this coverage is excess."

Defendant acknowledges that the bus in which Joan and Ann were injured qualifies as a "non-owned car" under the policy definitions and does not dispute plaintiffs' allegation that the transit company did not carry medical payments insurance on the bus. It maintains, however, that its payment of Joan's claim as a named insured under her own policy and Ann's claim as a spouse under Raymond's policy, had the effect of extending medical payments coverage to the bus, and as a result the excess clause—which it characterizes as a provision expanding the coverage available to an insured rather than limiting its own liability—was then activated to afford $25,000 additional coverage—had it been necessary—for the amount by which each of the claimant's medical expenses exceeded the $25,000 primary coverage already provided her by the policy under which her initial claim was made.

This argument is untenable. First, it is our view that placement of the excess clause under the heading "Limits of liability" in the "MEDICAL EXPENSES" section of each policy illustrates that, with respect to defendant's interests, its purpose was not to provide additional coverage to an insured but, rather to reduce the company's lia-

bility to excess, or secondary, coverage where the nonowned vehicle carries medical payments coverage insurance. Consequently, having attempted to minimize its liability by way of this provision, defendant must show that the exclusionary language therein is clear, unambiguous and applicable to the claims submitted. In our view, it has failed to meet this burden. Applying ordinary rules of grammar and usage, it is clear that the words "on it" in the phrase "If *** a non-owned car *** has other vehicle medical payments coverage on it ***" refers to coverage on the bus. Inasmuch as primary insurance liability attaches immediately upon the happening of the occurrence giving rise thereto (*State Farm Fire & Casualty Co. v. Moore* (1981), 103 Ill. App. 3d 250, 430 N.E.2d 641), and since there is no dispute that the CTA did not carry medical payments insurance on any of its buses at the time of the accident, defendant's assertion that its subsequent assumption of liability for the expenses resulting therefrom extended coverage to the bus so as to activate the excess clause must fail.

■ Relying primarily on *Laurie v. Holland America Insurance Co.* (1961), 31 Ill. App. 2d 437, 176 N.E.2d 678, defendant nevertheless argues that notwithstanding the excess clauses, plaintiffs are entitled only to indemnification for actual medical expenses they incurred as a result of the accident, not double indemnification.

In *Laurie*, plaintiff was the named insured under two separate automobile insurance policies issued by the defendant-insurer, covering two vehicles he owned. Following an accident in which his son, who qualified as an insured under both policies, was struck by a nonowned vehicle, plaintiff filed a claim for medical expenses under the medical payments coverage section of one policy, and after receiving reimbursement therefor, submitted a second claim for the same amount under the other policy. When the insurer denied it, plaintiff brought an action in which summary judgment was granted in his favor. On appeal, however, the court reversed that judgment, holding that, having been fully indemnified for expenses incurred as a result of the accident through payment of the first claim, plaintiff was entitled to no further recovery.

We do not believe, however, that the holding in *Laurie* is controlling of the issue before us. First, the facts in that case are readily distinguishable from those in the case at bar. The policies there both contained what the *Laurie* court found to be "applicable, unambiguous exclusionary clauses" which provided:

> "Other Insurance—Under [the medical payments provisions] the insurance shall be excess over any other valid and collectible insurance available to an insured under any other policies."

Here, as we have previously stated, the excess clauses are not applicable to the claims presented and thus, cannot serve as a basis, like those in *Laurie*, for denial thereof. Although defendant posits that the applicability of the exclusionary provisions was not the sole consideration upon which the *Laurie* decision was founded, we note that three of the four cases cited by the plaintiff therein were distinguished by the court either because the policies under scrutiny contained no excess clauses or were found to be ambiguous, or simply inapplicable. That the applicability of the excess clauses was the determinative factor in *Laurie* is also evidenced by the court's concluding statement:

> "Treating the policy provisions strictly as a policy for indemnity there is grave *doubt* as to whether plaintiff could have had a double recovery had there been no excess insurance clause. *With such clause in both policies no further recovery is possible.*" (Emphasis added.) 31 Ill. App. 2d 437, 449, 176 N.E.2d 678, 684.

Moreover, while the case has not been expressly overruled, the reasoning underlying the decision in *Laurie* is not in accord with later pronouncements by the Illinois Supreme Court and, therefore, is not sound support for defendant's position. Noting that the question of the permissibility of double recovery by an insured of medical payment benefits under two separate policies of insurance issued by one insurer was one of first impression in this State, the *Laurie* court found "helpful" in resolving the issue the reasoning employed in cases "between insurance companies on liability policies where one company has paid the total loss and seeks reimbursement from another company having a policy covering the same loss when both have 'excess' insurance clauses." (31 Ill. App. 2d 437, 440.) The court then reviewed an annotation discussing the various approaches taken by other jurisdictions and found most persuasive that first applied by the United States Court of Appeals in *Oregon Automobile Insurance Co. v. United States Fidelity & Guaranty Co.* (9th Cir. 1952), 195 F.2d 958, which was later expressly adopted by the Oregon Supreme Court in *Lamb-Weston, Inc. v. Oregon Automobile Insurance Co.* (1959), 219 Or. 110, 341 P.2d 110, *modified on rehearing* (1959), 219 Or. 130, 346 P.2d 643, and has since been commonly referred to as the "Oregon rule." Essentially, that rule is that in all cases where there is a conflict between identical, or even similar, "other insurance" clauses, the provisions should be rejected *in toto*, and liability prorated between the insurers.

Finding, after an extended discussion concerning the various

types of insurance, that policies of accident insurance, like those of liability insurance, are contracts of indemnity for losses resulting from an accident, the *Laurie* court, citing a law review article, stated:

"What the court really does in those cases is to treat the 'excess' insurance clause as though it were a 'pro rata' clause." (31 Ill. App. 2d 437, 444, 176 N.E.2d 678, 682.)

The court then held:

"There is no reason why there should be any difference in applying the same rules of law to both types [liability and accident] of insurance policies. In both cases the court is giving effect to a contract of indemnity, and the same rules should be applied to exclusionary clauses in either type of insurance.

Had the policies in the instant case been issued by two companies, one of which had paid the full amount, applying [the Oregon rule], it is our opinion that the second company could recover its pro rata share from the first. In this case had the plaintiff in the first instance brought suit against the defendant company upon both policies, he would not be entitled to two recoveries." 31 Ill. App. 2d 437, 446-47, 176 N.E.2d 678, 683.

Thus, a close reading of the opinion reveals that the *Laurie* decision was the product of a tortuous deductive process wherein the court applied the rationale underlying the Oregon rule in determining that the excess clauses should have been treated as if they were *pro rata* clauses, which would result in an apportionment of the total loss between the two policies, and that since plaintiff had already recovered that amount under one policy, no additional recovery could be had.

Whether or not the Oregon rule was intended to encompass a situation such as the one in *Laurie* is of little consequence, however, since a review of subsequent cases reveals that the rule has since been expressly rejected by Illinois courts. In *Jensen v. New Amsterdam Insurance Co.* (1965), 65 Ill. App. 2d 407, 213 N.E.2d 141, the appellate court overruled *Economy Fire & Casualty Co. v. Western States Mutual Insurance Co.* (1964), 49 Ill. App. 2d 59, 198 N.E.2d 723—which cited *Laurie* with approval—insofar as it adopted the Oregon rule without reservation, noted that on their facts *Laurie* and *Continental Casualty Co. v. New Amsterdam Casualty Co.* (1960), 28 Ill. App. 2d 489, 171 N.E.2d 406—on which both *Laurie* and *Economy* relied—were not authority for the Oregon rule, and stated:

"We believe it imperative and essential that the scope of the respective policies, the status of the insured thereunder, and all other pertinent factual circumstances attendant with liability under the circumstances of each case, must be considered in

connection with the construction of the respective policies." (65 Ill. App. 2d 407, 415, 213 N.E.2d 141, 145.)

Thereafter, in *New Amsterdam Casualty Co. v. Certain Underwriters at Lloyds, London* (1966), 34 Ill. 2d 424, 216 N.E.2d 665, and again in *Putnam v. New Amsterdam Casualty Co.* (1970), 48 Ill. 2d 71, 269 N.E.2d 97, the supreme court, noting the reliance by *Laurie* and other courts on the reasoning on which the Oregon rule was based, expressly rejected that view and adopted, instead, the majority approach, which is to reconcile conflicting exclusionary clauses whenever possible so as to give effect to "the most significant factor of all—the intent of the parties." *Putnam v. New Amsterdam Casualty Co.* (1970), 48 Ill. 2d 71, 78, 269 N.E.2d 97, 100.

In view thereof, we believe, contrary to defendant's position, that not only is *Laurie v. Holland America Insurance Co.* (1961), 31 Ill. App. 2d 437, 176 N.E.2d 678, factually distinguishable from this case due to the absence here of any applicable exclusionary provisions, but also that it would be of questionable precedential value even in a case where such provisions seemingly applied to the circumstances giving rise to the claim, insofar as its holding was followed without regard for the intent of the parties as gleaned from the language of the policy read in the context of the given factual setting in which the policy was issued. See *Glidden v. Farmers Automobile Insurance Association* (1974), 57 Ill. 2d 330, 336, 312 N.E.2d 247, 250, citing with approval *Jensen v. New Amsterdam Insurance Co.* (1965), 65 Ill. App. 2d 407, 415, 213 N.E.2d 141, 145.

With respect to the intent of the parties here, defendant acknowledges that Joan qualified for coverage as the named insured under her own policy and as a relative under her father's; that Ann similarly qualified as a spouse and a relative, respectively, under Raymond's and Joan's policies and defendant concedes that had one of the policies been issued by another insurer, recovery could likely be had under both. We see no reason for a different result simply because defendant issued both policies. As noted at the outset, Joan and Raymond each contracted individually with defendant for separate policies of automobile insurance in which defendant agreed—in return for separate and near-identical premiums—to pay up to $25,000 in medical expense benefits for accidental injury sustained by the named insured, his or her spouse and relatives while occupying a nonowned vehicle. Having determined that plaintiffs met the definitions of "insureds" under the policy and otherwise qualified for coverage thereunder; that in paying separate premiums for medical expense coverage they must have expected to receive, and defendant to provide additional insur-

ance benefits; that there is no exclusionary language in either policy limiting them to recovery under only one; and because such a limitation easily could have been included had defendant intended it, we conclude that plaintiffs were entitled to payment of their claims for medical expense benefits as relatives under the policies before us and that summary judgment for defendant was, therefore, improper.

We do not believe, as defendant posits, that this result conflicts with the holding in *Glidden v. Farmers Automobile Insurance Association* (1974), 57 Ill. 2d 330, 312 N.E.2d 247, in which the supreme court allowed plaintiff to recover medical expenses under three automobile insurance policies issued by one insurer "not to exceed, however, the total damages sustained." (57 Ill. 2d 330, 337, 312 N.E.2d 247, 251.) Initially, we note that like *Laurie v. Holland America Insurance Co.* (1961), 31 Ill. App. 2d 437, 176 N.E.2d 678, *Glidden* is factually distinguishable from the instant case in that it involved the question of whether an insured could aggregate or "stack" uninsured motorist and medical expense coverage provided by three policies, each of which contained a *pro rata* "other insurance" clause. Moreover in determining that plaintiff was entitled to "stack" both his uninsured motorist and medical expense coverage limits, the court stated:

> "If there is to be a 'windfall' in this situation, it should be to the insured, who paid the several premiums, rather than to the insurer, which collected them." 57 Ill. 2d 330, 336, 312 N.E.2d 247, 250-51.

Similarly, in *Kaufmann v. Economy Fire & Casualty Co.* (1979), 76 Ill. 2d 11, 389 N.E.2d 1150, allowing recovery of uninsured motorist benefits under separate policies of insurance issued to different members of the same family, the court held the "other insurance" clauses therein to be inapplicable and, quoting *Squire v. Economy Fire & Casualty Co.* (1977), 69 Ill. 2d 167, 370 N.E.2d 1044, observed:

> "[I]n the payment of multiple premiums, the insured must have expected to receive, and the insurer to provide, additional insurance benefits." 76 Ill. 2d 11, 17, 389 N.E.2d 1150, 1153.

■ Finally, although we agree with plaintiffs regarding their right to recover medical payment benefits under both contracts of insurance, we see no basis for their contention that defendant violated the Consumer Fraud & Deceptive Business Practices Act (Ill. Rev. Stat. 1983, ch. 121½, par. 261 *et seq.*), by misrepresenting the amount of coverage it intended to provide under the policies at issue; and because it appears that no Illinois case to date has addressed and re-

solved the precise issue presented by the facts here, we cannot say that defendant's refusal to pay the second claims submitted by plaintiffs was vexatious or without reasonable cause under section 155 of the Insurance Code (Ill. Rev. Stat. 1983, ch. 73, par. 767), so as to entitle them to an award of damages, costs or attorney fees.

For the reasons stated, the order of the trial court granting summary judgment for defendant is reversed, and this cause is remanded for proceedings consistent with the views expressed herein.

Reversed and remanded.

PINCHAM and LORENZ, JJ., concur.