AMERICAN STATES INSURANCE COMPANY, Plaintiff-Appellant, v. ACTION FIRE EQUIPMENT, INC., *et al.*, Defendants-Appellees.

Second District No. 2—86—0355

Opinion filed June 18, 1987.—Rehearing denied July 20, 1987.

John C. Bartler, of McKenna, Storer, Rowe, White & Farrug, of Wheaton, for appellant.

Gerald M. Sheridan, Jr., of Wheaton, for appellees.

JUSTICE NASH delivered the opinion of the court:

Plaintiff, American States Insurance Company, appeals from a declaratory judgment that it owed a duty to defend or indemnify its insured, defendant, Action Fire Equipment, Inc., in an action brought against defendant by Nicholson's Tavern. Plaintiff contends that: (1) the trial court erred in denying its motion for summary judgment; (2) the declaratory judgment was against the manifest weight of the evidence; (3) defendant failed to comply with the notice requirements of the insurance policy; and (4) sanctions should be entered against defendant.

Action Fire, which sells and services automatic fire extinguishing systems and hand-held fire extinguishers, purchased insurance policies from American State from 1974 through 1983. In January 1976, plaintiff added an endorsement to its policies which excluded coverage for "the failure of any automatic fire extinguisher system." On June 18, 1981, a fire occurred at Nicholson's Tavern, which had a dry chemical fire suppression system serviced by Action Fire. Defendant received notice of the fire on July 9, 1981, but did not report the occurrence to plaintiff until suit for damages was filed against defendant by the tavern owners in December 1982.

Plaintiff commenced this action seeking a declaratory judgment that it was not obligated to defend or to indemnify defendant against the claims of Nicholson's Tavern premised upon the exclusion endorse-

ment and defendant's failure to promptly notify plaintiff of the occurrence. In its answer, defendant admitted that the exclusion endorsement was attached to the 1981-82 policy in force at the time of the tavern fire.

Plaintiff filed a motion for summary judgment alleging that defendant had been aware of the exclusion endorsement and that it relieved plaintiff as insurer of any duty to defend under the terms of the policy. Defendant also moved for summary judgment supported by an affidavit by Thomas Vincent, president of Action Fire, stating that a dry chemical fire suppression system is not an "automatic fire extinguisher system" within the meaning of the exclusion endorsement. The trial court denied both motions for summary judgment.

Defendant's amended answer admitted that the exclusion endorsement had been attached to the 1979-80 and 1980-81 insurance policies, but denied that it had been properly attached to the policy issued for the period from 1981 to 1982. Defendant alleged that the page containing the endorsement in that policy had been reversed so that it appeared to be a blank sheet until examined by defendant in preparation for trial.

At the bench trial Thomas Vincent, defendant's general manager of special hazards and former president, stated that he referred to Action Fire's fire protection systems as "fire extinguishing systems" and "automatic fire extinguishing systems" over the course of 13 years of operation. Vincent testified that he was informed in 1976 by John Sutorius, his insurance agent, that American State's insurance premiums had increased to $1,112 and that an exclusion for automatic fire extinguishing equipment had been added to the policy. Sutorius advised that he had inquired of American States about the exclusion and was told that it was standard practice, but was unable to discover the exclusion covered. Vincent testified that he told Sutorius to straighten the matter out because he wanted complete coverage and that Sutorius told him, "(D)on't worry. You have insurance. They charge you for it on the front of the policy. They can't go inside of it and take it away from you. This is something that will have to be tested in Court."

Vincent testified that he did not ask Sutorius to try to have the exclusion removed from the policy or request that Sutorius obtain a policy which did not contain the exclusion. He acknowledged, however, that in a prior deposition he had stated that he told Sutorius to have plaintiff remove the exclusion or obtain a policy with a different insurance company. Vincent also testified that his primary reason for seeking a new policy was because of the increased premiums and that

he was unsure whether he had asked Sutorius to obtain a policy without the exclusion. Vincent said he and Sutorius later learned of insurance companies whose policies did not have the exclusion, but which charged higher premiums, and he did not obtain these policies because of the higher cost.

Vincent also testified that he told Sutorius in 1974 and 1976 to ensure that Action Fire had complete coverage and Sutorius did not raise the issue of the exclusionary endorsement again after the 1976 discussions. Vincent stated that he relied on Sutorius to obtain full coverage for him and therefore believed he had full coverage after his conversations with Sutorius. He also testified that he did not know if the exclusion endorsement was present in American States' subsequent policies because he did not read them and that he did not examine the current policy until the claim was made against him and then found that the exclusion endorsement was face down and sideways between two sheets of the policy. Vincent further stated that his wife had found a letter from Sutorius which advised that American States' new exclusion endorsement would exclude Action Fire's fire extinguishing systems from coverage, but he had not read it.

John Sutorius testified that he was an insurance broker who does business with American States. He stated that when he first became aware of the revised exclusion endorsement in 1976, he contacted American States and was told that it would not consider removing the endorsement. Sutorius called Thomas Vincent a few days later and notified him that plaintiff had made a change in its policy and the exclusion endorsement now covered the failure of any automatic fire extinguisher system. Sutorius testified that he told Vincent that the policy would not provide coverage if defendant's system failed during a fire and the building burned down. He also informed Vincent that other insurance companies also excluded such coverage and advised him to contact his attorney about its effect. Sutorius denied telling Vincent that he did not know what the endorsement excluded, that Vincent should not worry about the coverage, or that the meaning of the endorsement would have to be resolved in court.

Sutorius further testified that Vincent told him to send in the policy but to search for another insurance company that would provide better coverage. Sutorius was unable to find such a company until February 1977, when he learned that Cover-X, an insurance company, would provide $300,000 coverage for bodily injury and $100,000 for property damage without the exclusion endorsement for a premium of $6,751. At that time, American States charged Action Fire a premium of $6,057 for $500,000 of bodily injury coverage and $300,000

for property damage. Vincent told Sutorius that Action Fire required at least its current coverage and the Cover-X policy was therefore unacceptable.

On cross-examination, Sutorius testified that Vincent was very knowledgeable about insurance policies and coverages and that the purpose of the certificates of insurance is merely to provide evidence that the insured has coverage.

American States offered into evidence a letter from Sutorius to Vincent dated February 10, 1976, which stated that the endorsement was a standard provision and he had been unable to find a policy without the endorsement. Plaintiff also introduced a publication of standards by the National Fire Protection Association (NFPA) and installation reports of Action Fire which used the term fire extinguishing systems without distinguishing between wet and dry systems.

After plaintiff rested its case, Vincent testified that only wet fire protection systems, which completely discharge in 10 seconds, actually extinguish a fire by preventing a recurrence of the fire. Dry fire protection systems, which discharge in 40 seconds, expel chemicals up to 100 feet away from the blaze and do not necessarily prevent a recurrence of the fire because the chemicals do not have cooling properties. He stated that the wet chemical system forms a soap that turns grease and fats into noncombustible materials, while the dry system merely stops the immediate blaze but does not prevent the hazardous substances from igniting again. He also stated that the wet fire protection systems work harder to convert hazardous substances into noncombustible material in increased temperatures and while he has never seen a fire reignite with a wet system, 20% of fires extinguished by dry chemical systems do reignite.

On cross-examination, Vincent testified that the NFPA pamphlet is a standard accepted in the industry and that a dry chemical system is considered a fire extinguishing system in the industry.

The trial court found that the exclusion endorsement was ambiguous and that the insurance policy created a liability responsibility which plaintiff had a duty to defend and to indemnify defendant in the underlying action based upon the principles of estoppel. This appeal followed.

■ Plaintiff first contends the trial court erred in denying its motion for summary judgment. However, it is well established that the denial of a motion for summary judgment is not reviewable on appeal after a trial has been held because any error in denial merges into the subsequent judgment. *Skach v. Gee* (1985), 137 Ill. App. 3d 216, 221, 484 N.E.2d 441, *appeal denied* (1986), 111 Ill. 2d 579; *Paulson v.*

*Suson* (1981), 97 Ill. App. 3d 326, 328, 423 N.E.2d 243.

■■ ■ Plaintiff next contends that the trial court erred in entering judgment for defendant under the doctrine of estoppel. Estoppel refers to the reliance by one party on the word or conduct of another whereby the party changes its position and subsequently suffers harm. It arises whenever one by his conduct, affirmative or negative, intentionally or through culpable negligence, induces another to believe and have confidence in certain material facts, and, the latter having the right to do so, relies and acts thereon, and is, as a reasonable and inevitable consequence, misled to his injury. (*Gary-Wheaton Bank v. Meyer* (1984), 130 Ill. App. 3d 87, 95-96, 473 N.E.2d 548, *appeal denied* (1985), 106 Ill. 2d 554; *Wilson v. Illinois Benedictine College* (1983), 112 Ill. App. 3d 932, 939, 445 N.E.2d 901.) The doctrine was developed to prevent a party from asserting rights where the assertion of those rights would work a fraud or an injustice on the other party. *Launius v. Najman* (1984), 129 Ill. App. 3d 498, 504, 472 N.E.2d 170, *appeal denied* (1985), 102 Ill. 2d 554; *Martin Brothers Implement Co. v. Diepholz* (1982), 109 Ill. App. 3d 283, 288, 400 N.E.2d 320, *appeal denied* (1982), 92 Ill. 2d 568.

■ We agree with plaintiff that defendant's certificates of insurance do not constitute evidence that defendant had full coverage, but were merely evidence of the existence of a policy. (*Federal Insurance Co. v. Country Mutual Insurance Co.* (1975), 24 Ill. App. 3d 917, 322 N.E.2d 66, *appeal denied* (1975), 58 Ill. 24 596.) This is particularly true where, as here, the certificates state that they should not be construed to extend coverage beyond the exclusions contained in the policy. (See *Lezak & Levy Wholesale Meats, Inc. v. Illinois Employers Insurance Co.* (1984), 121 Ill. App. 3d 954, 957, 460 N.E.2d 475.) We also note that Vincent, as president of the insured, had a duty to read the policy (*Floral Consultants, Ltd. v. Hanover Insurance Co.* (1984), 128 Ill. App. 3d 173, 179, 470 N.E.2d 527; *Dobosz v. State Farm Fire & Casualty Co.* (1983), 120 Ill. App. 3d 674, 682, 458 N.E.2d 611, *appeal denied* (1984), 99 Ill. 2d 528), and cannot now claim he was unaware of the terms of the exclusion. Although Action Fire argues that the exclusion was not attached to the 1981-82 policy because it had been inserted in a reversed position, the testimony at trial showed that the exclusion had been a part of the policy for several years, that Vincent had no reason to believe that the exclusion had been withdrawn from the policy, and that the exclusion was discovered by Vincent during his first examination of the 1981-82 policy. We conclude the exclusion was sufficiently attached to the policy for purposes of charging Vincent with notice of its provisions.

Defendant's theory of estoppel was based upon Vincent's testimony that he relied in good faith on statements by plaintiff's agent, Sutorius, that Action Fire was fully covered despite the exclusion endorsement in its policy. Specifically, Vincent testified that Sutorius first mentioned the exclusion endorsement during a conversation about increased premiums and stated he was unsure about the coverage of the exclusion, but assured Vincent that Action Fire had full coverage under the policy. Although Vincent admitted that he asked Sutorius to find another insurance policy for Action Fire, Vincent stated that his request was based solely on a desire to pay lower premiums. Vincent also admitted asking Sutorius to have American States remove the exclusion, but then testified that he told Sutorius to ensure that Action Fire had complete coverage and relied on Sutorius' statement that Action Fire had such coverage under plaintiff's policy.

However, Sutorius testified that he told Vincent that the exclusion endorsement would not cover the failure of any automatic fire extinguisher system and Vincent asked him to find a policy that would provide such coverage. He denied telling Vincent that he did not know what the endorsement excluded or that Vincent should not worry about coverage. A letter from Sutorius to Vincent was also introduced into evidence which stated that the endorsement was a standard policy and Sutorius was unable to find a policy without the endorsement. Vincent denied ever reading the letter.

■ We conclude that the trial court's decision was against the manifest weight of the evidence. Both Vincent's testimony and Sutorius' letter to him show that Vincent was concerned about the exclusion endorsement and was interested in procuring a policy without the exclusion. This fact is incompatible with Vincent's testimony that Sutorius told him not to worry about the exclusion and that he relied on this statement in concluding that Action Fire had complete coverage under plaintiff's policy. Moreover, Vincent was charged with notice of the endorsement even if he did not read the policy and, regardless of whether the terminology applies to dry chemical systems, the provision expressly states that it excluded coverage for automatic fire extinguisher systems. Even if Sutorius had told Vincent he had complete coverage under the policy, Vincent could not here rely in good faith on that statement, and we conclude that plaintiff's action was not barred by estoppel.

■ ■ We next consider whether the exclusion endorsement is ambiguous and, if so, whether it applies to both wet and dry fire protection systems. If the insurance policy was clear and unambiguous,

the trial court should apply its provisions as written. (*McDonald v. Country Mutual Insurance Co.* (1985), 133 Ill. App. 3d 89, 94, 478 N.E.2d 571; *Murphy v. Peterson* (1984), 129 Ill. App. 3d 952, 955, 473 N.E.2d 480.) However, we agree with the trial court that the provision, stating that coverage was excluded for the failure of "any automatic fire extinguisher system," does not, on its face, necessarily apply to all types of fire protection systems.

In determining whether the provision extends to both wet and dry chemical systems, we consider the general rules of construction which apply to other contracts. (*Regent Insurance Co. v. Rucker* (1985), 138 Ill. App. 3d 843, 845, 486 N.E.2d 924, *appeal denied* (1986), 111 Ill. 2d 595; *State Farm Mutual Automobile Insurance Co. v. Salerno* (1984), 121 Ill. App. 3d 384, 385, 459 N.E.2d 1075.) That is, where an insurer attempts to limit liability by excluding coverage under certain circumstances, it has the burden of showing that the claim falls within the exclusion relied upon since it is presumed that the insured intended to obtain coverage and that the insurer would have stated any such exclusion clearly and specifically. (*Strzelczyk v. State Farm Mutual Automobile Insurance Co.* (1985), 138 Ill. App. 3d 346, 350, 485 N.E.2d 1230, *aff'd* (1986), 113 Ill. 2d 327, 497 N.E.2d 1170; *State Farm Fire & Casualty Co. v. Moore* (1981), 103 Ill. App. 3d 250, 256, 430 N.E.2d 641, *appeal denied* (1982), 91 Ill. 2d 565.) Also, when an exclusionary clause in an insurance policy is relied upon to deny coverage, its applicability must be clear and free from doubt. *Trovillion v. United States Fidelity & Guaranty Co.* (1985), 130 Ill. App. 3d 694, 699, 474 N.E.2d 953, *appeal denied* (1985), 106 Ill. 2d 560; *Dobosz v. State Farm Fire & Casualty Co.* (1983), 120 Ill. App. 3d 674, 679-80, 458 N.E.2d 611, *appeal denied* (1984), 99 Ill. 2d 528.

■ Here, American States had the burden of proving that its exclusionary clause clearly applied to all automatic fire protection systems, including both wet and dry types. In support of its argument, it introduced a NFPA pamphlet and installation reports from Action Fire documents which referred to fire extinguishing systems without distinguishing between the two types. Although Thomas Vincent testified that dry chemical systems did not actually extinguish fires and enumerated several differences between wet and dry fire protection systems, he admitted that the NFPA pamphlet is considered to be the standard in the industry, that a dry chemical system is considered a fire extinguishing system in the industry, and that he refers to both systems as automatic fire extinguishing systems. We consider this evidence demonstrates that the term "automatic fire extinguishing systems" commonly refers to both wet and dry chemical systems in the

industry, despite the differences between the two systems. This conclusion also comports with the commonsense notion that both systems extinguish fires, albeit with different degrees of effectiveness. If the words of a policy can reasonably be given their plain, ordinary and popular meaning, the provision should be applied as written and the parties should be bound by the insurance agreement they made. (*Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 495, 475 N.E.2d 872; *Robinson v. Hertz Corp.* (1986), 140 Ill. App. 3d 687, 688, 489 N.E.2d 332, *appeal denied* (1986), 111 Ill. 2d 595.) We conclude that American States' exclusion endorsement included the failure of a dry chemical system and that plaintiff therefore had no duty to defend or indemnify defendant in the underlying claims.

In view of our disposition of this issue we need not address plaintiff's contention that defendant failed to comply with the notice requirements of the insurance policy.

■ Plaintiff also argues that sanctions should be entered against defendant under section 2—1005(f) of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005(f)). This issue has been waived since plaintiff failed to challenge the sufficiency of the subject affidavit in the trial court. *Kolakowski v. Voris* (1980), 83 Ill. 2d 388, 398, 415 N.E.2d 397.

Accordingly, the judgment of the circuit court is reversed.

Reversed.

REINHARD and UNVERZAGT, JJ., concur.