ECONOMY FIRE & CASUALTY COMPANY, Plaintiff-Appellee, v. SHERRY BASSETT, Defendant-Appellant and Third–Party Plaintiff-Appellant (Patricia Mills, Defendant; Dylan Jones, a Minor by his Guardian *ad litem*, Doug Dorris, Defendant-Appellant and Third–Party Plaintiff-Appellant; Connie Gott *et al.*, d/b/a Burnett Insurance Agency, Third–Party Defendants-Appellees).

Fifth District   No. 5—87—0209

Opinion filed June 10, 1988.

KARNS, J., concurring in part and dissenting in part.

Douglas N. Dorris, of Harris, Lambert & Wilson, of Marion, for appellant.

Bleyer & Bleyer, of Marion, for appellees Connie Gott, Robylee Gott and Bruce Burnett.

Douglas A. Enloe and Robert M. Hopkins, both of Gosnell, Benecki, Borden & Enloe, Ltd., of Lawrenceville, for appellee Economy Fire & Casualty Company.

PRESIDING JUSTICE HARRISON delivered the opinion of the court:

Dylan Lee Jones, a minor, through his guardian *ad litem*, Doug Dorris, appeals from a judgment of the circuit court of White County which (1) declared that Economy Fire & Casualty Company was not obligated to provide coverage to Sherry Bassett under her homeowner's policy for liability arising from an accident at Bassett's home in which Dylan was injured, and (2) held that Connie Gott, Robylee Gott, and Bruce Burnett, d/b/a Burnett Insurance Agency, were not liable for failing to procure insurance which would have covered that accident. For the reasons which follow, we affirm in part, reverse in part, and remand.

The record established that Sherry Bassett operated a licensed day-care facility at her home at Rural Route 1, Sunnybrook Meadows, Carmi, Illinois. At the time of the incident giving rise to this litigation, Bassett had provided babysitting services in her home for approximately nine years. She received compensation for these services. On any given day, she would have up to eight children in her care.

Among the children for whom Bassett was being paid to baby-sit was three-year-old Dylan Jones. On October 16, 1981, Dylan was at Bassett's home, along with Mandy Sparrow, Carla and Dusty Pritchard, Devon and Deon Erkman, and Jamie and Kathy Mills. At approximately 4:30 p.m., Patricia Mills drove into Bassett's driveway to pick up Jamie and Kathy, her children. As Mills backed out to leave, her automobile struck and injured Dylan.

Dylan's parents brought a personal injury action on his behalf against both Mills and Bassett. Bassett held a homeowner's insurance policy from Economy Fire & Casualty Company, which she had purchased through Connie and Robylee Gott at the Burnett Insurance Agency. Bassett notified Economy of the lawsuit, and it provided her with legal representation under a reservation of rights. At the same time, it filed the action *sub judice* against Bassett, Mills, and Dylan

seeking a declaratory judgment that its policy with Bassett did not cover Dylan's accident. The basis for Economy's claim was an exclusion in the policy which provided:

"1. Coverage E—Personal Liability and Coverage F—Medical Payments to Others do not apply to bodily injury or property damage:

\* \* \*

b. arising out of business pursuits of any Insured \* \* \*.

\* \* \*

This exclusion does not apply to:

(1) activities which are ordinarily incident to non-business pursuits \* \* \*."

Dylan, through his guardian *ad litem*, Doug Dorris, and Sherry Bassett each then brought a third-party action against Connie Gott, Robylee Gott, and Bruce Burnett, d/b/a Burnett Insurance Agency, alleging that the Gotts and Burnett had failed to exercise reasonable skill, care, and diligence in procuring insurance for Bassett which would cover her residence and the babysitting business she conducted there and, in the alternative, that they had breached an oral contract to obtain such insurance for her.

Following a bench trial, judgment was entered in favor of Economy on its complaint against Bassett, Mills, and Dylan, and in favor of the Gotts and Burnett on the third-party claims of Bassett and Dylan. In entering this judgment, the circuit court expressly found, *inter alia*:

(1) that the policy issued by Economy to Bassett did not cover the accident on October 16, 1981, in which Dylan was injured because that accident, and the resulting damages, "arose from the business pursuits of Sherry Bassett, and not activities which are ordinarily incident to non-business pursuits";

(2) that Robylee Gott, Connie Gott, and Bruce Burnett, d/b/a Burnett Insurance Agency, did not serve as agents of Economy in procuring that policy, and Economy was therefore not bound by any acts or omissions which these parties are claimed to have committed; and

(3) that Robylee Gott, Connie Gott, and Bruce Burnett, d/b/a Burnett Insurance Agency, neither breached any contract, nor acted negligently in procuring insurance for Bassett.

■ Post-trial motions filed by Bassett and Dylan were denied, and Dylan alone now appeals. As grounds for his appeal, Dylan argues that the circuit court erred in finding that the exclusionary clause of the policy issued by Economy to Bassett precluded coverage

for Dylan's injuries. Dylan does not dispute that Bassett's baby-sitting, performed as it was on a regular basis and for compensation, constituted a "business pursuit" within the meaning of that clause. (See *State Farm Fire & Casualty Co. v. Moore* (1981), 103 Ill. App. 3d 250, 252, 430 N.E.2d 641, 643.) Rather, the thrust of his contention is that the exception to the "business pursuit" exclusion for "activities which are ordinarily incident to non-business pursuits" is ambiguous and therefore must be strongly construed against Economy to provide coverage in this case.

Where, as here, an exclusionary clause in an insurance policy is relied upon to deny coverage, its applicability must be clear and free from doubt. (*American States Insurance Co. v. Action Fire Equipment, Inc.* (1987), 157 Ill. App. 3d 34, 42, 509 N.E.2d 1097, 1102.) The burden of showing that a claim falls within the exclusion rests with the insurer, because there is a presumption that the insured intended to obtain coverage and that the insurer, as drafter of the policy, would have stated any such exclusion clearly and specifically. (157 Ill. App. 3d at 42, 509 N.E.2d at 1102.) Similarly, where there is an ambiguity in the insurance policy, all exclusions, conditions, or provisions which tend to limit or defeat liability should be construed most favorably to the insured. *Marathon Plastics, Inc. v. International Insurance Co.* (1987), 161 Ill. App. 3d 452, 464, 514 N.E.2d 479, 486.

A provision in an insurance policy is deemed ambiguous if it is subject to more than one reasonable interpretation. (161 Ill. App. 3d at 464, 514 N.E.2d at 486.) Nevertheless, courts will not create an ambiguity where none exists. (*State Farm Fire & Casualty Co. v. Moore* (1981), 103 Ill. App. 3d 250, 255, 430 N.E.2d 641, 646.) In determining if an ambiguity exists, the provision in question must be read in its factual context, not in isolation. *Strzelczyk v. State Farm Mutual Automobile Insurance Co.* (1985), 138 Ill. App. 3d 346, 350, 485 N.E.2d 1230, 1233, *aff'd* (1986), 113 Ill. 2d 327, 497 N.E.2d 1170.

Provisions virtually identical to the exclusionary clause at issue here have been construed in the context of baby-sitting by a variety of jurisdictions. As demonstrated by the exhaustive discussion in *State Farm Fire & Casualty Co. v. Moore* (1981), 103 Ill. App. 3d 250, 253-56, 430 N.E.2d 641, 644-47, some courts have held the provision to be unclear and ambiguous, while others have declared it to be unambiguous. In *Moore* itself, the provision was found to be ambiguous as applied to a situation where a young child for whom the insured was baby-sitting pulled a pan of boiling water onto himself. The insured was going to use the boiling water to make lunch for herself, her own children, and two children who were in her care, including the injured

child. The insured was compensated for her babysitting services and provided lunch every day for those children as part of her services, but would have prepared lunch for herself and her children even if she had not been baby-sitting.

In analyzing whether the child's injuries arose from an activity not "ordinarily incident to non-business pursuits," the court in *Moore* held that the particular activity which proximately caused the injury must be examined to determine if that activity is one ordinarily associated with a baby-sitter's function. (103 Ill. App. 3d at 254, 430 N.E.2d at 645.) According to the court:

> "Child care for compensation is not ordinarily incident to the conduct of a household, and contemplates the exercise of due care to protect the child from household activities and conditions. [Citation.] Injuries resulting from failure to properly supervise a child the insured is paid to care for therefore are not covered by the policy. [Citation.]" 103 Ill. App. 3d at 255, 430 N.E.2d at 645.

The majority nevertheless concluded that because the insured was preparing lunch for herself and her own children as well as for the children for whom she baby-sat, and because preparation of lunch is ordinarily incident to a nonbusiness pursuit, the insured was covered under the exception to the exclusion for business pursuits.

In this case, the circumstances are quite different. Here, Dylan was injured by a parent who had come to pick up other children for whom the insured was being paid to baby-sit. The accident happened as that parent was backing out of the insured's driveway. The insured did, of course, allow even nonbusiness visitors to use her driveway. At the same time, however, the use of the driveway by parents to drop off or pick up their children is an activity which we believe is ordinarily associated with a baby-sitter's function. Here, the parent had come to the insured's home for no reason other than to pick up her children, and Dylan apparently would not have been injured had the insured properly supervised him. We therefore agree with the circuit court that Dylan's injuries were not covered by the policy.

■ As an alternative theory of recovery against Economy, Dylan argued that the Gotts and Burnett committed certain acts and omissions and that those acts and omissions should be binding on Economy because the Gotts and Burnett were Economy's agents. As we have noted, the circuit court held that the Gotts and Burnett did not serve as agents so as to bind Economy by their acts and omissions, and Dylan now claims that this finding is contrary to the manifest weight of the evidence. This contention must also fail. The record be-

fore us adequately established that the Gotts and Burnett were insurance brokers who represented the insured, Sherry Bassett, and not agents of the insurer, Economy.

Under Illinois law an insurance broker is one who

"procures insurance and acts as middleman between the insured and the insurer, and solicits insurance business from the public under no employment from any special company, but, having secured an order, places the insurance with a company selected by the insured, or, in the absence of any selection by him, with the company selected by such broker." (*Lazzara v. Howard A. Esser, Inc.* (7th Cir. 1986), 802 F.2d 260, 264.)

Insurance agents, on the other hand, are those who have a "fixed and permanent relation to the companies they represent and have certain duties and allegiances to such companies." (*Black v. Illinois Fair Plan Association* (1980), 87 Ill. App. 3d 1106, 1108, 409 N.E.2d 549, 551.) Although the Gotts and Burnett had the authority to solicit the sale of Economy policies and could "bind" Economy to coverage until such time as a policy application was received by and accepted or rejected by Economy, the evidence also showed that the Burnett Insurance Agency was independent and solicited the sale of policies from a variety of different insurance companies. It had no fixed and permanent relationship to Economy, or any other company.

When Bassett needed insurance she went to the Gotts and explained what her situation was. Robylee Gott then suggested the particular policy that was purchased. Bassett did not direct the Gotts to obtain insurance from a specified insurer, but rather relied on the Gotts' judgment. Connie Gott agreed that "[the Bassetts] more or less placed their insurance needs in [our] hands and [we] took care of them." These factors adequately supported the trial court's conclusion that the Gotts and Burnett were "insurance brokers" not "insurance agents," and their agency relationship was with the Bassetts, not Economy. Because the Gotts and Burnett were not agents for Economy, nothing that they knew or should have known and no negligent act on their part can be imputed to Economy. *Black v. Illinois Fair Plan Association* (1980), 87 Ill. App. 3d 1106, 1109, 409 N.E.2d 549, 552.

■ A third, and more substantial, claim made by Dylan is that the circuit court erred in finding that the Gotts and Bruce Burnett did not act negligently in procuring insurance for Bassett. As we have just discussed, the Gotts and Burnett acted as insurance brokers for Bassett. Illinois law places a particular burden on an insurance broker to exercise competence and skill when he renders the service of pro-

curing insurance coverage. (*Pittway Corp. v. American Motorists Insurance Co.* (1977), 56 Ill. App. 3d 338, 347, 370 N.E.2d 1271, 1277.) As a general rule:

> "[A]n insurance broker is bound to exercise reasonable skill and diligence in the transaction of the business entrusted to him and will be responsible to his principal for any loss resulting from his failure to do so. [Citation.] In this regard we observe that the primary function of an insurance broker as it relates to an insured is to faithfully negotiate and procure an insurance policy according to the wishes and requirements of his client. [Citations.]" 56 Ill. App. 3d at 346-47, 370 N.E.2d at 1277.

The relationship between an insured and his broker, acting as the insured's agent, is a fiduciary one even though the broker may be compensated by some third party. (*Black v. Illinois Fair Plan Association* (1980), 87 Ill. App. 3d 1106, 1110, 409 N.E.2d 549, 552.) A broker is not liable if he acts in good faith and with reasonable care, skill, and diligence to place the insurance in compliance with his principal's instructions. (*Omni Overseas Freighting Co. v. Cardell Insurance Agency* (1979), 78 Ill. App. 3d 639, 643, 397 N.E.2d 112, 115.) On the other hand:

> "If an agent neglects to procure insurance or does not follow instructions when obligated so to do, or if the policy obtained is void or materially defective through the agent's fault, or if the principal suffers damage by reason of any mistake or act of omission or commission of the agent which constitutes a breach of duty to his principal, he is liable to his principal for any loss he may have sustained thereby." *The Evan L. Reed Manufacturing Co. v. Wurts* (1914), 187 Ill. App. 378, 385-86, quoted in *Black v. Illinois Fair Plan Association* (1980), 87 Ill. App. 3d 1106, 1110, 409 N.E.2d 549, 552.

Dylan contends that the Gotts and Burnett should be held liable under these standards because they failed to take reasonable steps to insure that the policy which they sold to Bassett was adequate for her needs. We agree. According to Bassett, she told Robylee Gott that she baby-sat in her home. Although she did not recall any specific conversation with the Gotts regarding coverage for her business, she also explained that she never knew to ask about this in particular. In her words, "I just thought the homeowner's had always covered for me."

That the Gotts did, in fact, know that Bassett baby-sat in her home for compensation at the time they sold her the policy from Economy is clearly established by the record. Connie Gott, who filled out the actual application form for the Bassetts, testified that she

lived on the same street with them and had known Sherry Bassett was baby-sitting for pay before 1979, when the Economy policy was first issued. The testimony of Robylee Gott was to the same effect. There was also evidence that the Gotts had even referred to Sherry Bassett a family member in need of babysitting services. Despite this knowledge, the Gotts admitted that they never warned Sherry Bassett that she might need additional coverage for her babysitting service.

Connie Gott could not remember Sherry Bassett or her husband requesting coverage for Sherry's babysitting business, but she also stated that she never saw the policy itself and did not know it contained a business exclusion clause. Robylee Gott, who apparently recommended this particular policy to the Bassetts, explained the failure to recommend additional coverage by stating that "I just never thought about [the baby-sitting] as a business and I wasn't concerned about it." At trial Robylee attempted to justify her omission by stating that she did not believe the baby-sitting would be construed as a business unless Bassett were licensed by the State. She admitted that if she had known Bassett had a license she would have inquired further into the matter.

This justification is wholly inadequate. There is no dispute that Bassett was licensed by the State at all relevant times. Gott simply never bothered to ask about it. More importantly, Gott apparently was not told about the significance of having a license until after Dylan was injured and a claim was submitted to Economy. There is nothing in the record to suggest that the Gotts made any attempt prior to the accident to determine whether or not Bassett's babysitting services would be covered. This is so even though Economy had representatives available who brokers such as the Gotts could call when they had questions about an Economy policy.

To support their position, the Gotts called as an expert witness Cecil Logan, an insurance broker from the Carmi area with 20 years of experience. Logan explained that when a person is interested in buying a homeowner's policy, the broker will normally simply fill out the application form provided by the company and send it in for processing with whatever supporting information might be required. He said that if he was aware that the proposed insured baby-sat in her home it would cause him no particular concern, assuming the baby-sitting was done on a casual basis, and that he would not make any further inquiry about it. If, on the other hand, the babysitting service was licensed by the State, the situation would be different and he would make further inquiries.

On cross-examination Logan clarified that if a person came into his office seeking homeowner's insurance and he knew that there might be factors relevant to issuance of the policy that were not covered by the application form, he would ask about them before submitting the application to the company. Logan further testified that while licensing by the State is the most important criteria in determining whether he should make further inquiries into whether a babysitting service was covered by a homeowner's policy, it was not the only criteria. The number of children being cared for was also an important factor. According to Logan, he would probably ask the company about whether a policy would apply if the baby-sitter cared for five children on a daily basis, and he might inquire if the baby-sitter cared for as few as three children per day. How often the baby-sitter cared for children was another factor, as well as if and how much the baby-sitter was being paid. To avoid any problems, Logan testified that if he knew a customer did baby-sitting but he was not certain how many children the person baby-sat for, he would ask more about it.

Logan stated that an insurance broker will ascertain the needs of his client and decide what policy application should be submitted to the company based on his perception of the client's need. Logan said that he read and tried to remain familiar with the contents of the policies issued to his clients. He said that it is good practice to know what exclusions are contained in the different policies and added that if he knew a client might be subject to some exposure, he would warn the client about that exposure.

In view of this evidence we fail to see how the circuit court's judgment in favor of the Gotts and Burnett can be sustained. The Gotts knew or should have known that Bassett might need additional coverage for her babysitting service. They could easily have ascertained from Economy whether that babysitting service was covered under the policy which they chose for her. They did not. Sherry Bassett and her husband placed their insurance needs in the hands of the Gotts and the Burnett Insurance Agency. The Gotts and the agency for which they worked agreed to accept this responsibility, but they clearly did not understand or try to understand the product they were selling, and their efforts to ascertain the Bassetts' actual insurance needs were virtually nonexistent. In short, the actions of the Gotts and the Burnett Insurance Agency in selling this policy to the Bassetts were devoid of the reasonable care, skill, and diligence required by the law.

■ The Gotts and Bruce Burnett, d/b/a Burnett Insurance Agency, claim that they nevertheless cannot be held liable because the

Bassetts had a copy of the policy, they had ample opportunity to read it, and they should therefore have brought any discrepancies in the policy to the attention of the Gotts before the accident occurred. In support of this argument they cite *Foster v. Crum & Forster Insurance Cos.* (1976), 36 Ill. App. 3d 595, 345 N.E.2d 49. That case is not on point. It involved the liability of an insurer to the insured. The case before us concerns a broker's negligent failure to procure proper insurance. In such cases, as this court has previously held, an insured's failure to read his own policy is not an absolute bar to the insured's right to recover against his broker for breach of the broker's fiduciary duty. *Black v. Illinois Fair Plan Association* (1980), 87 Ill. App. 3d 1106, 1110-11, 409 N.E.2d 549, 553.

For the foregoing reasons, we believe that the circuit court of White County correctly entered judgment in favor of Economy Fire & Casualty Company in its declaratory judgment action, but that it erred in entering judgment for the Gotts and Bruce Burnett, d/b/a Burnett Insurance Agency, on Dylan's third-party claim. Accordingly, the circuit court's judgment is affirmed in part and reversed in part, and the case is remanded for further proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

WELCH, J., concurs.

JUSTICE KARNS, concurring in part and dissenting in part:
I concur in the decision of the court except that part imposing potential liability on the Gotts and Burnett, d/b/a Burnett Insurance Agency.

The trial court determined as a question of fact that the Gotts and Burnett were not negligent in failing to procure a policy of insurance that provided coverage for this occurrence. In a nonjury case, the findings of the trial court will not be overturned unless clearly against the manifest weight of the evidence or the judgment is incorrect as a matter of law. *Kern v. Rafferty* (1985), 131 Ill. App. 3d 728, 476 N.E.2d 52.

Plaintiff testified she never specifically requested coverage to cover her babysitting business. The policy was a standard homeowner's policy which had been in effect since 1979. She had never read the policy. Defendants had never specifically inquired if plaintiff wanted such coverage, and the inference is warranted that defendants were unaware that the policy excluded such a business pursuit.

The basis of this court's decision is to fashion a rule of law that an insurance agent has a duty to explore in depth the potential insurance needs of his clients and offer to procure insurance to cover potential risks that may be associated with each client, which presumably will be desired. Of course, questions of cost may arise. For instance, assume the standard homeowner's policy excludes coverage for money and valuables, such as furs and jewelry. Does the agent have a duty to review with each principal the kinds of valuable that might be in his home and the cost of related coverage?

We are really imposing a duty to inquire on insurance agents. The potential for liability is extensive. It does not seem to me unreasonable that the principal should have the responsibility to ask if his business activity is covered and to request such coverage if desired. This would certainly prompt the agent to inquire of his companies about such coverage and the cost. In fact, for all we know in this case, the defendants could assume, if they had thought about it, that plaintiff had business coverage through some other arrangement.