**GOULD INC., Plaintiff,**

v.

**CONTINENTAL CASUALTY CO., Defendant.**

Civ. No. 91–4072.

United States District Court, E.D. Pennsylvania.

May 12, 1993.

Diana S. Donaldson, Ira P. Tiger, Schnader, Harrison, Segal & Lewis, Dennis R. Suplee, Philadelphia, PA, for plaintiff.

Donna M. Kemp, Craig Russell Blackman, William J. Barker, Jr., Stradley, Ronon, Stevens & Young, Philadelphia, PA, Stephen C. Baker, Stradley, Ronon, Stevens & Young, Wayne, PA, Samuel J. Arena, Jr., Stradley, Ronon, Stevens & Young, Philadelphia, PA, Samuel J. Arena, Jr., Stradley, Ronon, Stevens & Young, Wayne, PA, for defendant.

## MEMORANDUM AND ORDER

YOHN, District Judge.

The plaintiff, Gould Inc., originally filed a motion for partial summary judgment on April 29, 1992. By this motion, the plaintiff sought an order that the defendant, Continental Casualty Company, was obligated under the insurance policies it issued to the plaintiff to indemnify the plaintiff for the costs associated with an United States Environmental Protection Agency ("EPA") mandated clean-up. The plaintiff incurred these costs as a result of its statutory liability for eight illegal disposals of hazardous wastewater made over 83 days by a company the plaintiff hired to dispose of the waste.

By agreement of the parties, the court ordered this case and the pending motion placed in civil suspense on June 9, 1992 awaiting the decision by the Supreme Court of Illinois on the appeal of *Outboard Marine Corporation v. Liberty Mutual Ins. Co.*, 212 Ill.App.3d 231, 156 Ill.Dec. 432, 570 N.E.2d 1154 (1991). This appeal concerned the meaning of pollution exclusion language similar to that now in dispute.

On December 4, 1992, the Illinois Supreme Court filed its opinion. *Outboard Marine Corporation v. Liberty Mutual Ins. Co.*, 154 Ill.2d 90, 180 Ill.Dec. 691, 607 N.E.2d 1204 (1992). The plaintiff has since renewed its motion for partial summary judgment. For the reasons explained in this memorandum and order, the court will deny the plaintiff's motion.

## FACTUAL BACKGROUND

In 1976, the plaintiff, a corporation engaged in the electronics business, purchased a facility in Dunmore, Pennsylvania. The plaintiff maintained an automotive battery plant at the Dunmore facility as part of its manufacturing operations in its automotive battery division.

When the plaintiff commenced operations at the Dunmore plant in 1976, the plant's on-site wastewater treatment facility was still under construction. Consequently, the plaintiff contracted with ABM Disposal Company ("ABM"), a waste hauling company, to dispose of the wastewater generated by the start-up operations at the Dunmore plant from July 30, 1976 to October 21, 1976.

Over this 83 day period, ABM removed eight loads of wastewater from the Dunmore plant. Each load of wastewater consisted of approximately 5,000 to 6,000 gallons. ABM deposited the waste into a well at 362–372 Henderson Road in King of Prussia, Pennsylvania ("Henderson Road site"). The removed waste contained such substances as copper, zinc, chromium, lead, oil and grease. All of these substances are considered hazardous substances under the Comprehensive Environmental Response, Compensation, and

Liability Act ("CERCLA"), 42 U.S.C. § 9601(14).

In June, 1985, the EPA notified the plaintiff that it had determined that the Henderson Road site, which at that time was operated by O'Hara Sanitation Company, was a hazardous waste site. The EPA identified the plaintiff as a potentially responsible party ("PRP") in connection with this site since all eight loads of waste the plaintiff delivered to ABM for disposal were illegally dumped at this site. As a PRP, the EPA sought to have the plaintiff contribute toward the remediation of the Henderson Road site.

In November, 1985, the plaintiff and other PRPs signed an EPA Administrative Order of Consent to participate in a Remedial Investigation and Feasibility Study ("RI/FS"). Subsequently, the EPA issued an order, pursuant to CERCLA, § 106, 42 U.S.C. § 9606, requiring the plaintiff and other PRPs to contribute to the clean-up of the Henderson Road site. This order did not find that the plaintiff was aware of the illegal disposals at this site. However, the plaintiff was liable for the clean-up since CERCLA § 107, 42 U.S.C. § 9607, imposes strict liability on responsible parties, regardless of fault. On June 14, 1991, the plaintiff entered into an agreement with the other PRPs to fund the remediation of the Henderson Road site.

When the plaintiff received notice from the EPA in June, 1985 that it was a PRP, the company was insured by two policies issued by the defendant. One policy was a comprehensive general liability policy (policy number CCP 984 8000) that provided up to one million dollars ($1 million) in coverage. The second policy was an umbrella excess third-party liability policy (policy number RDU 148 1000) that provided up to nine million dollars ($9 million) in coverage. The umbrella excess policy expressly incorporates the coverage provisions of the underlying comprehensive general liability policy. The excess policy also expressly includes the pollution exclusion provision. Both insurance policies covered the plaintiff for the period February 1, 1974 through February 1, 1977. Neither party alleges that any other insurance policy covered the plaintiff during this time period.

Shortly after the plaintiff received notice from the EPA that it was a PRP, the plaintiff notified the defendant of the potential claim. The defendant accepted the plaintiff's defense under a written reservation of rights. The defendant provided for the plaintiff's defense for almost three years. However, on July 1, 1988, the defendant informed the plaintiff that it was withdrawing from the plaintiff's defense because:

"[r]ecent federal court decisions in various jurisdictions have supported the pollution exclusion on claims for clean up of hazardous waste sites. (citations omitted). The courts have stated that clean up costs are not "property damage" and for that reason should not be payable by insurance companies under standard general liability business insurance policies. All of the information developed regarding the Henderson Road Site indicates that the only claim is for the site clean up costs. For that reason, we must hereby advise that no coverage exists under the Comprehensive General Liability contract."

Exhibit O to Plaintiff's Statement of Uncontested Facts.

The plaintiff now seeks indemnification from the defendant to the extent that the plaintiff has incurred costs in connection with both the defense and settlement of the proceedings arising from the EPA mandated remediation at the Henderson Road site. The defendant asserts that it has no obligation to the plaintiff since no such coverage existed.

### CHOICE OF LAW

The court has jurisdiction over the present dispute pursuant to 28 U.S.C. § 1332 in that the amount in controversy exceeds $50,000 and the parties are citizens of different states. Since the court has jurisdiction based on diversity, the court must decide which state's substantive law to apply to the dispute.

The insurance contracts at issue in the present dispute are silent as to choice of law. The plaintiff urges this court to apply Illinois law since it believes it has the most significant relationship with the policies. In a letter addressed to the court dated June 5,

1992, the defendant initially took no position on the choice of law question since it believed it would prevail under either Illinois or Pennsylvania law. However, the defendant now contends that Pennsylvania law should be applied since the wrongful conduct occurred at a site situated in Pennsylvania.

A federal court exercising diversity jurisdiction must apply the choice of law rule of the forum state. *Klaxon Company v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Shields v. Consolidated Rail Corp.*, 810 F.2d 397, 399 (3d Cir.1987). Thus, Pennsylvania's choice of law rules will determine which state's substantive law will apply to this case.

The seminal choice of law case in Pennsylvania is *Griffith v. United Airlines, Inc.*, 416 Pa. 1, 203 A.2d 796 (1964). In *Griffith*, the Pennsylvania Supreme Court abandoned the traditional *lex loci delicti* doctrine. That doctrine dictated that the law of the place of the injury be applied to tort cases. In its place, the *Griffith* court adopted a modified version of the flexible approach of the Restatement (Second) of Conflicts of Laws (1969). Under this flexible approach, a court must first determine whether a conflict actually exists between the jurisdictions which may have an interest in the dispute. *Parker v. State Farm Ins. Co.*, 543 F.Supp. 806 (E.D.Pa.1982). If the court finds a conflict exists, the court must perform a governmental interest analysis along with the significant relationships approach set forth in the Restatements (Second) of Conflicts of Laws. *Myers v. Commercial Union Assur. Cos.*, 506 Pa. 492, 485 A.2d 1113 (1984); *Parker, supra.* Although the *Griffith* case involved a tort action, subsequent cases have extended the same rationale and approach to contract cases involving a choice of law question. *See In re Complaint of Bankers Trust Co.*, 752 F.2d 874, 881–82 (3d Cir.1984); *Melville v. American Home Assur. Co.*, 584 F.2d 1306, 1312–13 (3d Cir.1978) (construing *In Re Hunter*, 421 Pa. 287, 218 A.2d 764 (1966).

On the issue in question here, what constitutes a "sudden and accidental" occurrence in the pollution exclusion language contained in the two policies, the court finds that Illinois law and Pennsylvania law do conflict. Under Pennsylvania law, "sudden and accidental" retriggers coverage under the pollution exclusion if the damages resulting from pollution discharges are both sudden, meaning abrupt and lasting only a short time, and accidental, meaning unexpected. *See Lower Paxton Township v. United States Fidelity and Guaranty Company*, 383 Pa.Super. 558, 557 A.2d 393 (1989); *Techalloy Co. v. Reliance Ins. Co.*, 338 Pa.Super. 1, 487 A.2d 820, *allocatur denied*, 338 E.D.Allo.Dkt. 1985 (Pa. Oct. 31, 1985); *United States Fidelity & Guaranty Co. v. The Korman Corp.*, 693 F.Supp. 253 (E.D.Pa.1988); *American Mutual Liability Ins. v. Neville Chemical Co.*, 650 F.Supp. 929 (W.D.Pa.1987). However, under Illinois law, "sudden and accidental" retriggers coverage under the pollution exclusion if the damages resulting from pollution discharges are unexpected or unintentional. *See Outboard Marine Corporation v. Liberty Mutual Insurance Co.*, 154 Ill.2d 90, 180 Ill.Dec. 691, 607 N.E.2d 1204 (1992). Since a conflict does exist between Illinois law and Pennsylvania law, the court must determine which state's law to apply.

In deciding which state's law to apply, the court will combine the most significant relationship approach set forth in the Restatement (Second) of Conflicts of Law with the governmental interest analysis. *See Melville v. American Home Assurance Co.*, 584 F.2d 1306 (3d Cir.1984). The Restatement recommends resolution of a choice of law question involving a contract dispute be based upon consideration of the following factors: (a) the place of contracting; (b) the place of negotiation of the contract; (c) the place of performance; (d) the location of the subject matter of the contract; and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties. Restatement (Second) of Conflict of Laws § 188 (1969). Section 193 of the Restatement deals specifically with fire, surety or casualty insurance contracts. Comment b to Section 193 states the principle that greater weight should be given to the state of the insured risk in making a choice of law determination. However, comment b states that this principle would be inapplicable to the facts of this case since the comprehensive general liability policy here was intended to insure the risks

of business operations scattered throughout a number of states.

█ Applying the Restatement factors in this instance, the court concludes there are more contacts with Illinois than Pennsylvania. The insurance policies were negotiated and entered into in Illinois. *See* Exhibits A and B of Exhibits to Statement of Uncontested Facts. The place of performance, unless the policy explicitly provides otherwise, is where the premiums are received. *See Armotek Industries Inc. v. Employers Ins. of Wausau,* 952 F.2d 756 (3d Cir.1991). The parties do not dispute that the place of performance for the two insurance policies in dispute was Illinois. When the parties entered into the contracts, the parties were either domiciled or headquartered in Illinois. *See* Defendant's Answer to Plaintiff's Complaint ¶ 3; Veysay Aff. ¶ 4 in Plaintiff's Exhibit to Statement of Uncontested Facts. The fact that the hazardous waste was located in Pennsylvania is the only factor which weighs in favor of applying Pennsylvania law. However, at the times the policies were issued, the plaintiff owned facilities throughout the United States which were covered by the same two insurance policies as the ones presently being disputed. Veysey Aff. ¶ 5.

Having determined that Illinois has the most significant contacts, the court turns to the governmental interest of each state. In this instance, Pennsylvania no longer has a strong interest in this suit since remediation of the Pennsylvania site has been completed. However, Illinois still has a substantial interest in the interpretation of insurance contracts that were issued by an Illinois insurance company, performed in Illinois and negotiated in Illinois. *See General Star National Ins. Co. v. Liberty Mutual Ins. Co.,* 960 F.2d 377 (3d Cir.1992) (protection of insured parties is the primary public policy behind laws governing duties owed by an insurer to an insured; thus applied law of the jurisdiction where the insured resided and the policy was presumed delivered). Therefore, since Illinois has the most significant contacts and the most substantial governmental interest in this litigation, the court will apply the laws of Illinois.

## DISCUSSION

### I. *SUMMARY JUDGMENT STANDARD*

The requirements for summary judgment are provided in Rule 56(a) of the Federal Rules of Civil Procedure. Rule 56(a), in pertinent part, states:

> [a] party seeking to recover upon a claim, counterclaim, crossclaim or to obtain a declaratory judgment may, at any time after the expiration of twenty days from the commencement of the action or after service of a motion for summary judgment by the adverse part, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof.

Fed.R.Civ.P. 56(a).

Summary judgment is appropriate if there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Small v. Seldows Stationery,* 617 F.2d 992, 994 (3d Cir.1980). The moving party need not produce evidence to disprove the opponent's claim but does carry the burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). In turn, the non-moving party must offer specific facts contradicting the facts averred by the movant which indicate there is no genuine issue for trial. *Lujan v. National Wildlife Federation,* 497 U.S. 871, 884, 110 S.Ct. 3177, 3186, 111 L.Ed.2d 695 (1990). If there are no genuine issues as to material facts, the court must determine whether the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c).

### II. *APPROPRIATENESS OF SUMMARY JUDGMENT*

Count I of the plaintiff's amended complaint seeks monetary compensation in connection with the EPA mandated clean-up of the Henderson Road site. Count II of the plaintiff's amended complaint seeks a judgment declaring (a) that the defendant must indemnify the plaintiff for the clean-up of the Henderson Road site, and (b) that the defendant must reimburse the plaintiff for its legal fees in connection with the clean-up. In essence, the plaintiff seeks summary judg-

ment as to count II. The defendant asserts that the plaintiff's partial summary judgment motion is inappropriate since it addresses the applicability of the pollution exclusion, which is a defense asserted by the defendant, to the facts of this case.

■ Neither the third circuit nor a court within this district has addressed the appropriateness of discussing defenses in a motion for summary judgment. Other courts have held that a court can properly entertain a motion for partial summary judgment that contains affirmative defenses. *See Koch Industries, Inc. v. United Gas Pipe Line Co.,* 700 F.Supp. 865 (M.D.La.1988); *First National City Bank v. Kline,* 439 F.Supp. 726 (S.D.N.Y.1977). In this instance, the court finds no merit in the defendant's assertion. The plaintiff's partial summary judgment motion seeks declaratory judgment on the defendant's obligation under the policies it issued. In order to grant the plaintiff the relief requested, the court must address the pollution exclusion defense raised in the policies. Therefore, under the circumstances of this case, the court concludes that the plaintiff's summary judgment motion is appropriate.

## III. *THE INSURANCE POLICY PROVISIONS*

In order for the court to determine the defendant's obligation to indemnify the plaintiff for the costs it incurred in connection with the remediation of the Henderson Road site, the court must examine and interpret the language contained in the comprehensive general liability policy.[1] The policy's coverage provision reads as follows:

The company [defendant] will pay on behalf of the **insured** [plaintiff] all sums which the **insured** shall become legally obligated to pay damages because of

A. **bodily injury** or

B. **property damage**

to which this insurance applies, caused by an **occurrence**, and the company shall have the right and duty to defend any suit against the **insured** seeking damages on account of **bodily injury** or **property dam-**

age, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit it deems expedient . . .

Exhibit A to Plaintiff's Statement of Uncontested Facts at 15A.

The policy defines **occurrence** as meaning:

an accident, including continuous or related exposure to conditions, which results in **bodily injury** or **property damage** neither expected or intended from the standpoint of the insured;

Exhibit A to Plaintiff's Statement of Uncontested Facts at 7A.

**Property damage,** as defined in the policy means:

(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time relating therefrom, or

(2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an **occurrence** during the policy period;

Exhibit A to Plaintiff's Statement of Uncontested Facts at 7A.

Both policies, under which the plaintiff now seeks indemnification, contained in an exclusionary provision that reads as follows:

This insurance does not apply:

to **bodily injury** or **property damage** arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon the land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental;

Exhibit A to Plaintiff's Statement of Uncontested Facts at 15A.

---

1. The court will focus its inquiry on the comprehensive general liability policy since, as previously stated, the terms of the comprehensive general liability policy are expressly incorporated into the umbrella excess policy.

## IV. PLAINTIFF'S ENTITLEMENT TO INDEMNIFICATION PURSUANT TO THE COVERAGE PROVISION

■ Under Illinois law, the duty to defend under the terms of the insurance policy is not coextensive with the duty to indemnify. The duty to indemnify only arises if the insured becomes legally obligated for a judgment in the underlying action. *Outboard Marine Corp. v. Liberty Mutual Ins. Co.*, 154 Ill.2d 90, 180 Ill.Dec. 691, 708, 607 N.E.2d 1204, 1221 (1992); *International Minerals & Chemical Corp. v. Liberty Mutual Ins. Co.*, 168 Ill.App.3d 361, 366, 119 Ill.Dec. 96, 99, 522 N.E.2d 758, 761, *appeal denied*, 122 Ill.2d 576, 125 Ill.Dec. 218, 530 N.E.2d 246 (1988). "In other words, the question of whether the insurer has a duty to indemnify the insured for a particular liability is only ripe for consideration if the insured has already incurred liability in the underlying claim against it." *Outboard Marine Corporation*, 180 Ill.Dec. at 708, 607 N.E.2d at 1221. If the insured does incur such a liability, the duty to indemnify arises if the resulting loss or damage falls within the coverage provisions of the insurance policy. *Id.*

In this instance, the plaintiff and the government have already entered into a consent decree to contribute to a trust fund to clean-up the Henderson Road site. Clearly, the plaintiff has incurred liability for ABM's illegal dumping. Thus, the question for the court is whether the costs incurred by the plaintiff in remediating and defending the Henderson Road clean-up fall within the coverage of the comprehensive general liability policy.

In order for the plaintiff to succeed on the summary judgment issue of coverage, the plaintiff must show: (1) that there was "property damage" during the policy period; (2) that the costs paid by the plaintiff were "damages"; (3) that there was an occurrence; and (4) that the release was sudden and accidental.

The parties do not dispute that ABM's illegal dumping caused property damage at the Henderson Road site. Thus, the court must examine if the costs the plaintiff paid were "damages", if the illegal dumping constituted an occurrence and if the release was sudden and accidental.

### (A) "Damages"

Until its recent decision in *Outboard Marine Corporation*, the Supreme Court of Illinois never ruled on whether an insurer must provide coverage where the underlying action primarily seeks injunctive relief, a situation arising commonly in suits brought under CERCLA. The *Outboard Marine Corporation* court held that "damages" is unambiguous and that its ordinary plain meaning includes the costs of compliance with mandatory injunctions and/or response costs. *Outboard Marine Corporation*, 180 Ill.Dec. at 702, 607 N.E.2d at 1215.

■ In this instance, the defendant supplied the plaintiff with a comprehensive general liability policy. This type of policy provides a type of coverage in which the insurer assumes a wide variety of risks. *Id.* The defendant failed to expressly define or limit the definition of "damages" in the comprehensive general liability policy. Without such a limiting definition of "damages," the court must apply the *Outboard Marine Corporation* definition. Consequently, the court concludes, as a matter of law, that the costs associated with the EPA mandated clean-up of the Henderson Road site for which the plaintiff seeks indemnification are damages it was legally liable to pay. Thus, the defendant may be obligated to indemnify the plaintiff for those costs.

### (B) "Occurrences"

■ The coverage provision of the comprehensive general liability policy at issue in this case operates only if the property damage arises as a result of an occurrence, a term expressly defined in the policy. To qualify as an occurrence, the damage must result from an accident that the insured neither expected nor intended. In determining whether there has been an occurrence, "the relevant inquiry is not whether the insured intended or expected the event resulting in the damage but whether he intended or expected the damage resulting from the event." *International Minerals & Chemical Corp. v. Liberty Mutual Ins. Co.*, 168 Ill.App.3d 361, 119 Ill.Dec. 96, 103, 522 N.E.2d 758, 765 (1988).

The "occurrence" definition, standing alone, will cover any unexpected or unintended damage as if it were an "accident" without regard "to the nature of the event causing it, to whether the event took place gradually or instantaneously or to the insured's intentions or expectations as to its incidence." *International Minerals*, 119 Ill.Dec. at 103, 522 N.E.2d at 765. Thus, the insurer can only omit from its coverage any damage the insured intended or expected. *Id.* Since the one policy in question is a comprehensive general liability policy, "the class of events which initially qualify for coverage as an 'occurrence' under this provision is potentially unlimited." *Id.*

The plaintiff claims that it neither expected nor intended property damage to result from ABM's disposal of the Dunmore plant's wastewater. In support of this position, the plaintiff asserts that the evidence suggests that it wanted to properly dispose of the wastewater. Werchowski Dep. at 26, Exhibit D to Plaintiff's Statement of Uncontested Facts. The plaintiff selected ABM from what it believed was a government approved list of wastewater haulers. Werchowski Dep. at 43–44, 56.[2] Also, the contract that the plaintiff entered into with ABM contained a clause that required ABM to fully comply with all of the applicable laws. Exhibit I to Plaintiff's Statement of Uncontested Facts.

By contrast, the defendant alleges that the plaintiff expected the property damage that resulted from ABM's illegal dumpings. In order to support this claim, the defendant states that the plaintiff knew that the material could cause environmental damage. Hatterschide Dep. at 4–6, 18–19, 22, Defendant's Exhibit C; Werchowski Dep. at 14–16, 19, 26–27, Defendant's Exhibit E. The defendant alleges that the plaintiff's past dealings with ABM, coupled with the knowledge that the wastewater was potentially hazardous, shows that the plaintiff could have discovered that ABM engaged in environmentally unsafe practices and illegal dumpings. Thus, the defendant asserts that the illegal dumpings and the resulting property damage in this instance were expected events.

Specifically, the defendant cites to the following: (1) after allowing ABM to store liquid waste at the metals division of the plaintiff in Philadelphia in 1973, the plaintiff had to hire another contractor and expend its own money to remove hazardous residue from the tanks ABM used (Elmore Dep. at 43–45, Defendant's Exhibit B); (2) when ABM stored liquid waste in 1973, the plaintiff believed that ABM was doing so without an EPA permit (Exhibit 1 to Elmore Dep., Defendant's Exhibit B); (3) an ABM welder was involved in an explosion in 1973 at the plaintiff's Philadelphia facility while working on a tank truck; (4) the plaintiff made no effort to inquire into or check references about ABM's waste product disposal methods or locations (Werchowski Dep. at 42–43, Defendant's Exhibit E); and (5) the plaintiff had no reason to believe ABM would properly dispose of the waste.

The plaintiff counters the defendant's position with testimony that the battery division and the metals division operate independently and had no contact regarding either division's past dealings with ABM. Elmore Dep., Exhibit H to Plaintiff's Statement of Facts. The plaintiff also contends that even if someone in the battery division had knowledge of the prior dealings, these dealings are irrelevant since nothing would have put the plaintiff on notice that ABM would improperly dispose of the wastewater and cause the property damage.

■ The third circuit has stated that "issues of knowledge and intent are particularly inappropriate for resolution by summary judgment, since such issues must often be resolved on the basis of inferences drawn from the conduct of the parties." *Riehl v. Travelers Insurance Co.*, 772 F.2d 19, 24 (3d Cir.1985); *Accord Ness v. Marshall*, 660 F.2d 517, 519 (3d Cir.1981). In the context of this case, the inference of the plaintiff's knowledge which the defendant seeks to establish by plaintiff's prior dealing with ABM is sufficient to raise an issue of material fact as to the plaintiff's expectations. Thus, the court cannot grant summary judgment.

2. The list referred to in the deposition cannot be produced by the plaintiff nor can Werchowski state with 100% certainty that the list was a government approved list.

*(C) Pollution Exclusion and Exception*

Assuming, *arguendo*, that the court found no material issue of fact existed as to whether there was an occurrence, the court would need to address the pollution exclusion and exception. The pollution exclusion provision in the two policies contains two parts. First, the insurer excludes from coverage the release of environmental toxic materials into the earth's environment. Second, the insurer allows an exception to the exclusion by reinstating coverage for toxic releases. which are sudden and accidental. In this instance, the parties do not dispute that the exclusion applies since toxic wastewater was released at the Henderson Road site. The parties do dispute the applicability of the pollution exclusion exception.[3] Thus, the issue before this court is whether the releases were sudden and accidental, thereby triggering the pollution exclusion exception and reinstating coverage for the plaintiff.

■ The Supreme Court of Illinois recently ruled on what sudden and accidental means in the context of the pollution exclusion provision. In *Outboard Marine Corporation v. Liberty Mutual Ins. Co., supra.*, the court found sudden, as used in pollution exclusion language similar to the case at hand, to be ambiguous. 180 Ill.Dec. at 705, 607 N.E.2d at 1218. Since the ambiguity was contained in an exclusionary clause, the ambiguity was resolved against the insured. *Id.* The court determined that sudden had no temporal limitation. Instead, sudden was interpreted to mean unexpected or unintended. *Id.* Thus, the policy's coverage would protect the insured from unexpected or unintended releases, including those releases that may have been continuous. *Id.* 180 Ill.Dec. at 707, 607 N.E.2d at 1220. As a result of this ruling, the case was remanded to determine if the release was unexpected and unintended.

The *Outboard Marine Corporation* court recognized that unexpected or unintended was also an element of the policy's "occurrence" definition. *Id.* 180 Ill.Dec. at 707, 607 N.E.2d at 1220. The same is true for the policies currently being disputed. The *Out-board Marine Corporation* court distinguished the difference between the usage of unexpected or unintended in the occurrence definition as opposed to the pollution exclusion provision. In the occurrence provision, it is the property damage which must be unexpected or unintended. *Id.* In the pollution exclusion provision, it must be the toxic release which is unexpected or unintended. *Id.*

In this instance, the court must follow Illinois law. As such, the pollution exclusion exception will apply and retrigger coverage for the plaintiff if the toxic releases were unintended or unexpected.

■ The parties agree that the burden of proving the pollution exclusion falls on the defendant. However, the parties dispute who bears the burden of proving the applicability of the pollution exclusion exception. The defendant cites *Northern Insurance Co. v. Aardvark Assoc., Inc.*, 942 F.2d 189 (3d Cir.1991) for the proposition that once it established the applicability of the pollution exclusion, the burden shifts back to the plaintiff to demonstrate the applicability of the pollution exclusion exception. One flaw with this reasoning is that this case relied on Pennsylvania law, while in this instance the court must apply Illinois law. Conversely, the plaintiff contends that the burden of proof always stays with the defendant. The court has not found any rulings by the Supreme Court of Illinois on this issue. However, Illinois law provides that the burden of showing that a claim falls within an exclusion rests with the insurer. *Economy Fire & Casualty Co. v. Bassett,* 170 Ill.App.3d 765, 121 Ill.Dec. 481, 525 N.E.2d 539 (1988); *American States Insurance Co. v. Action Fire Equipment Inc.,* 157 Ill.App.3d 34, 109 Ill.Dec. 258, 263, 509 N.E.2d 1097, 1102 (1987). As the third circuit pointed out in *New Castle County v. Hartford Acci. & Indem. Co.,* 933 F.2d 1162, 1181–82 (3d Cir. 1991), if an absence of state law on the question exists, the court must allocate the burden in accordance with the traditional distinction between coverage and exclusion-

---

**3.** The plaintiff suggests that the defendant may not rely on the pollution exclusion provision to deny coverage since it failed to raise this defense as the basis of its July 1, 1988 disclaimer of coverage. The court finds no merit in this argument.

ary clauses. In a situation where an exception exists within an exclusion, the third circuit has held that the burden falls on the insurer. *Id.; Accord* 19 G. Couch, *Couch on Insurance 2d* § 79:385 at 388 (1983). Thus, since the sudden and accidental exclusion is part of an exclusionary clause, the court believes Illinois law would require the defendant to bear the burden of proof.

The parties raise the same factual disputes as referred to in the "Occurrence" section, *Supra,* to show whether or not the plaintiff expected the illegal dumpings by ABM. As the court stated above, the issues of knowledge and intent are particularly inappropriate for resolution by summary judgment. Thus, the court will not grant the plaintiff's motion for summary judgment as to whether the defendant had to indemnify the plaintiff for the costs incurred in defending and remediating the Henderson Road site.