CHEMETRON INVESTMENTS,
INC., Plaintiff,

v.

FIDELITY & CASUALTY COMPANY
OF NEW YORK, et al.,
Defendants.

ALLEGHENY INTERNATIONAL
CANADA, LTD., Plaintiff,

v.

FIDELITY & CASUALTY COMPANY
OF NEW YORK, et al.,
Defendants.

Civ. A. Nos. 90–1064, 92–1274.

United States District Court,
W.D. Pennsylvania.

May 25, 1994.

Co., Ltd., English and American Ins. Co., Ltd., River Thames Ins. Co., Ltd., Orion Ins. Co. Ltd., World Auxiliary Ins. Corp. Ltd., Underwriters at Lloyds, London.

Foster S. Goldman, Jr., Bruce C. Fuchs, Klett, Lieber, Rooney & Schorling, Pittsburgh, PA, for defendant Royal Ins. Co. of America.

Roger Curran, Rose, Schmidt, Hasley & DiSalle, Pittsburgh, PA, for defendant Federal Ins. Co.

Stephen M. Calder, Alfred J. Kuffler, Palmer, Biezup & Henderson, Philadelphia, PA, George M. Schumann, Dickie, McCamey & Chilcote, Pittsburgh, PA, for defendants Andrew Weir Ins. Co., Ltd., Nat. Cas. Co. of Detroit, Acc. & Cas. Ins. Co. of Winterthur, Nat. Cas. Co. of America, Ltd., Bermuda Fire & Marine Ins. Co., Turegum Ins., Co., Excess Ins. Co., Stronghold Ins. Co., Ltd., Swiss Union Gen. Ins. Co., Ltd., London and Edinburgh Gen. Ins. Co., Ltd., Helvetia Acc. Ins. Co., Ltd.

Stephen M. Calder, Alfred J. Kuffler, Palmer, Biezup & Henderson, Philadelphia, PA, Jane H. Veldman, Thomas J. Murnighan, Sharon Rice, Lord, Bissell & Brook, Chicago, IL, George M. Schumann, Dickie, McCamey & Chilcote, Pittsburgh, PA, for defendant Minster Ins. Co.

Lori D. Mendicino, Pittsburgh, PA, for defendant Allstate Ins. Companies.

Andrew M. Roman, Michael H. Ginsberg, Nancy L. Heilman, Cohen & Grigsby, Pittsburgh, PA, for plaintiff Chemetron Investments, Inc.

James W. Young, Jr., Willman & Arnold, Pittsburgh, PA, Jane H. Veldman, Thomas J. Murnighan, Sharon Rice, Lord, Bissell & Brook, Chicago, IL, for defendants Fidelity & Cas. Co. of New York, The Continental Ins. Co.

Jane H. Veldman, Thomas J. Murnighan, Sharon Rice, Lord, Bissell & Brook, Chicago, IL, for defendant St. Helens Ins. Co., Ltd.

Julie Fields Sweeney, Donald W. Bebenek, James F. Petraglia, Marshall J. Tindall, C.J. Passodelis, Meyer, Darragh, Buckler, Bebenek & Eck, Pittsburgh, PA, for defendant The Home Ins. Co.

M. Bruce McCullough, Buchanan Ingersoll, Pittsburgh, PA, Stephen M. Calder, Alfred J. Kuffler, Palmer, Biezup & Henderson, Philadelphia, PA, Jane H. Veldman, Thomas J. Murnighan, Sharon Rice, Lord, Bissell & Brook, Chicago, IL, George M. Schumann, Dickie, McCamey & Chilcote, Pittsburgh, PA, for defendants Dominion Ins.

### MEMORANDUM ORDER

BLOCH, District Judge.

AND NOW, this 25th day of May, 1994, upon consideration of the Motion for Summary Judgment filed by defendant, Allstate Insurance Company, as successor-in-interest to Northbrook Excess and Surplus Insurance Company, formerly known as Northbrook Insurance Company (document No. 252) filed in the above captioned matters on March 16, 1994, and upon consideration of the Motion for Summary Judgment filed by defendant, Home Insurance Company (document No. 249) filed in the above captioned matters on March 16, 1994, and upon further consideration of Plaintiffs' Response thereto,

IT IS HEREBY ORDERED that said Motions are DENIED.

AND, further, upon consideration of Plaintiffs' Motion for Partial Summary Judgment (document No. 246) filed in the above captioned matters on March 16, 1994, and upon further consideration of Defendants' Responses thereto,

IT IS HEREBY ORDERED that said Motion is GRANTED in part and DENIED in part, to wit:

1. Said Motion is GRANTED, to the extent that the defendants are relying upon Part III of the nuclear energy liability exclusions; and

2. Said Motion is DENIED in all other respects.

█ Summary judgment may be only be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In considering a motion for summary judgment, this Court must examine the facts in a light most favorable to the party opposing the motion. *International Raw Materi-* als, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir.1990).

█ The burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. *Chipollini v. Spencer Gifts, Inc.,* 814 F.2d 893, 896 (3d Cir.) (en banc), *cert. dismissed,* 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987). Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that "the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial." *Id.; Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

In its motion for summary judgment, defendant Allstate/Northbrook raises four arguments.[1] First, Allstate/Northbrook asserts that the claims of the plaintiffs fall "within the pollution exclusions" contained in the insurance policies and argues that plaintiffs "cannot demonstrate that the pollution or contamination was 'sudden and accidental' to come within the exception to the pollution exclusion." [2] Second, Allstate/Northbrook maintains that the liabilities incurred by plaintiffs at seven sites are insufficient to "involve" the excess insurance policies.[3] Third, Allstate/Northbrook argues that the "nuclear exclusion" contained in the policies "excludes all damages" arising at the McGean site because those damages "result from the 'radioactive contamination of property.'" Finally, Allstate/Northbrook renews its contention, which was raised in a previous motion for summary judgment and denied, that

---

1. Throughout this Order, the Court will refer to defendant Allstate Insurance Company as "Allstate/Northbrook" because it is the successor-in-interest to Northbrook Excess & Supply Insurance Company, formerly Northbrook Insurance Company.

2. The insurance policies issued by Allstate/Northbrook are identified as follows: (1) 63–000–946 (effective July 1, 1975 to July 15, 1976); (2) 63–002–022 (effective July 15, 1976 to July 1, 1977); (3) 63–003–312 (effective July 1, 1977 to July 1, 1978); and (4) 63–003–314 (effective July 1, 1977 to July 1, 1978).

3. Specifically, Allstate/Northbrook states that "the Bio–Ecology site, Haynes site, Lowry Landfill, Maxey Flats site, Port Hope site, Northeast Hazardous Waste site, and Organic Chemical site do not constitute a justiciable controversy between plaintiffs and Northbrook, since the costs incurred at each of those sites is less than $20,000 and there is no evidence that any of those sites will involve damages sufficient to involve the Northbrook excess policies." (Allstate/Northbrook's motion for summary judgment at ¶ 5). In joining Allstate/Northbrook's motion on this point, defendant Home Insurance states that these seven sites "have not caused Chemetron damage in an amount that would impact the excess insurer's policies and therefore do not present a justiciable controversy." (Home Insurance's motion for summary judgment at ¶ 4).

it is entitled to judgment as a matter of law on the basis of the failure of the plaintiffs to provide notice of the underlying claims.[4]

Defendant Home Insurance has joined Allstate/Northbrook's motion and additionally asserts that the policies, which it issued,[5] do not provide coverage for "owned property" and further that the evidence shows that there was "no occurrence" at any of these sites.[6]

Plaintiffs have moved for partial summary judgment requesting that the Court dismiss defendants' "affirmative defense that there is no coverage for claims which fall within the nuclear energy liability exclusion" contained in the policies issued by the defendants.[7]

### A. Choice of law

■ Where jurisdiction is based upon diversity of citizenship and amount in controversy, this Court must apply the choice of law rules of the forum state, Pennsylvania. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Shuder v. McDonald's Corp.*, 859 F.2d 266, 269 (3d Cir. 1988). "Before a choice of law question arises, however, there must actually be a conflict between the potentially applicable bodies of law." *Lucker Manufacturing v. Home Insurance Co.*, 23 F.3d 808, 808 (3d Cir.1994) (*citing Oil Shipping B.V. v. Sonmez Denizcilik Ve Ticaret A.S.*, 10 F.3d 1015, 1018 (3d Cir.1993)). Therefore, this Court will first determine whether an actual conflict exists between the potentially applicable bodies of law and then, if such a conflict exists, analyze the relevant factors under Pennsylvania choice of law principles.

Plaintiffs contend that Illinois law controls the insurance "coverage issues" in this case, including the applicability of any exclusions and/or exceptions to those exclusions.[8] Defendant Allstate/Northbrook, however, argues that Pennsylvania law controls these issues. Defendant Home Insurance appears to agree with plaintiffs that Illinois law should be applied to the coverage issues. A central issue with respect to the scope of coverage in the instant case involves the application of the "pollution exclusion" and the "sudden and accidental" exception to that exclusion.

■ Under Pennsylvania law, "the exception for 'sudden and accidental' discharges applies only to discharges that are abrupt and last a short time." *Northern Insurance Co. of New York v. Aardvark Associates, Inc.*, 942 F.2d 189, 193 (3d Cir.1991) (following *Lower Paxon Township v. United States Fidelity and Guaranty Co.*, 383 Pa.Super. 558, 557 A.2d 393 (1989), *appeal denied*, 523 Pa. 649, 567 A.2d 653 (1989), and *Techalloy Co. v. Reliance Insurance Co.*, 338 Pa.Super. 1, 487 A.2d 820 (1984), *appeal denied*, (Pa. Oct. 31, 1985); *accord Gould, Inc. v. Continental Casualty Co.*, 822 F.Supp. 1172, 1175 (E.D.Pa.1993).

According to the Pennsylvania Superior Court:

---

4. Having previously denied defendants' motions for summary judgment on the late notice issue, this Court will not revisit the issue.

5. Home Insurance issued the following policies: (1) HBC–9729619 (first layer excess-effective July 31, 1969 to July 31, 1972); (2) HBC–4345275 (first layer excess effective July 31, 1972 to August 1, 1975); (3) HBC–4975272 (first layer excess renewal-effective August 1, 1975 to July 1, 1976); and (4) HBC–9344665 (first layer excess renewal-effective July 1, 1976 to July 1, 1977). In addition, Home Insurance also issued a third layer excess policy effective July 31, 1972 to August 1, 1975 (HBC–4356369) and a third layer "umbrella policy" (HBC–9631303).

6. Home Insurance did not join in Allstate/Northbrook's motion "with respect to the argument of which state law applies." Home Insurance explicitly states both in its motion and brief that it joins in Allstate/Northbrook's motion and brief "except with respect to the argument of which state's law should apply." (Brief at 1; *see also* motion at ¶ 5).

7. In its motion, plaintiffs assert that defendant Home Insurance failed to plead the nuclear energy exclusion as an affirmative defense. Upon review of the answer filed by Home Insurance, the Court finds that the defendant adequately pled the applicability of the nuclear energy exclusion.

8. As used in this Order, "coverage issues" include issues arising under clauses providing for coverage under the policies, exclusions from coverage under the policies and/or exceptions to those exclusions.

To read "sudden and accidental" to mean only unexpected and unintended is to rewrite the policy by excluding one important pollution coverage requirement—abruptness of the pollution discharge. The very use of the words "sudden and accidental" reveal a clear intent to define the words differently, stating two separate requirements. Reading "sudden" in its context, i.e., joined by the word "and" to the word "accident", the inescapable conclusion is that "sudden," even if including the concept of unexpectedness, also adds an additional element because "unexpectedness" is already expressed by "accident." This additional element is the temporal meaning of sudden, i.e., abruptness or brevity.

*Lower Paxon Township,* 383 Pa.Super. 558, 557 A.2d at 402.

■ In contrast, the sudden and accidental exception under Illinois law "retriggers coverage under the pollution exclusion if the damages resulting from pollution discharges are unexpected or unintentional" without regard to the abruptness of the discharge. *Gould,* 822 F.Supp. at 1175 (*citing Outboard Marine Corp. v. Liberty Mutual Insurance Co.,* 154 Ill.2d 90, 180 Ill.Dec. 691, 607 N.E.2d 1204 (1992)).

Thus, Pennsylvania law and Illinois law conflict on this issue and the Court must apply Pennsylvania choice of law rules to ascertain the applicable body of law. *Gould,* 822 F.Supp. at 1175.

■ The Supreme Court of Pennsylvania has adopted a flexible approach to the choice of law, combining a relationship and interest analysis. *Griffith v. United Air Lines, Inc.,* 416 Pa. 1, 203 A.2d 796, 805 (Pa.1964). Both the Superior Court of Pennsylvania and the Court of Appeals for the Third Circuit have applied the *Griffith* approach to contract actions, even though *Griffith* involved only a tort action. *Hughes v. Prudential Lines, Inc.,* 425 Pa.Super. 262, 624 A.2d 1063 (1993), *appeal denied,* 535 Pa. 647, 633 A.2d 152 (1993); *McCabe v. Prudential Property and Casualty Insurance Co.,* 356 Pa.Super. 223,

514 A.2d 582, 585 (1986); *Compagnie des Bauxites v. Argonaut–Midwest Insurance,* 880 F.2d 685, 688 n. 9 (3d Cir.1989); *American Contract Bridge League v. Nationwide Mutual Fire Insurance Co.,* 752 F.2d 71, 74 (3d Cir.1985).

Under the *Griffith* approach, the Court "'takes into account both the grouping of contacts [listed in Restatement (Second) of Conflict of Laws § 188(2) (1971)] with the various concerned jurisdictions and the interests and policies that may be validly asserted by each jurisdiction.'" *Compagnie des Bauxites,* 880 F.2d at 689 (*quoting Melville v. American Home Assurance Co.,* 584 F.2d 1306, 1311 (3d Cir.1978)).

Section 188 of the Restatement (Second) of Conflict of Laws provides in pertinent part:

In the absence of an effective choice of law by the parties (*see* § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restatement (Second) Conflict of Laws § 188(2) (1971). These contacts must be weighed "'on a qualitative scale according to their relation to the policies and interests underlying the [relevant] issue.'" *Compagnie des Bauxites,* 880 F.2d at 689 (*quoting Shields v. Consolidated Rail Corp.,* 810 F.2d 397, 400 (3d Cir.1987)).

None of the parties contend explicitly that the law of the states where the sites are located should be applied.[9] Only All-

---

9. The Restatement (Second) of Conflict of Laws states:

The validity of a contract of fire, surety or casualty insurance and the rights created

thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect

state/Northbrook refers to the law of these "site states" on its way to concluding that Pennsylvania law is the appropriate substantive law to be applied.[10] In a previous Memorandum Order denying summary judgment on the issue, this Court determined that Pennsylvania law controlled the resolution of the late notice issues because the "plaintiffs' duty to give notice would have been discharged or performed in Pennsylvania." (Memorandum Order at 3 (May 21, 1993)).

Because the choice of law analysis is issue-specific, however, this Court's determination that Pennsylvania law controlled the notice issues is not dispositive of the coverage issues.[11] The process of applying different state's law to different issues in a case is known as "depecage." *See Crellin Technologies v. Equipmentlease Corp.,* 18 F.3d 1, 11 (1st Cir.1994); *Johnson v. Continental Airlines Corp.,* 964 F.2d 1059, 1064 (10th Cir. 1992); *Putnam Resources v. Pateman,* 958 F.2d 448, 465 (1st Cir.1992); *Ewing v. St. Louis–Clayton Orthopedic Group, Inc.,* 790 F.2d 682, 686 (8th Cir.1986); *Foster v. United States,* 768 F.2d 1278, 1281 (11th Cir. 1985); *Hutner v. Greene,* 734 F.2d 896, 901 (2d Cir.1984); *Broome v. Antlers' Hunting Club,* 595 F.2d 921, 923 and n. 5 (3d Cir. 1979). In the absence of controlling authority from the Pennsylvania Supreme Court, this Court is guided by the interpretation of Pennsylvania choice of law principles articulated by the Court of Appeals for the Third Circuit, which has repeatedly recognized that the choice of law process is issue-specific. *Compagnie des Bauxites,* 880 F.2d at 691; *Blakesley v. Wolford,* 789 F.2d 236, 241–43 (3d Cir.1986); *Broome,* 595 F.2d at 924.

Except for the fact that none of the hazardous waste is located in Pennsylvania, the instant case is analogous to *Gould.* In *Gould,* the district court applied the choice of law process set forth in *Griffith* to determine whether Pennsylvania or Illinois law governed various provisions of comprehensive general liability policies substantially similar to those at issue in this case. *Gould,* 822 F.Supp. at 1175–76. In *Gould,* the Court relied upon the following contacts with Illinois: (1) the insurance policies were negotiated in and entered into in Illinois; (2) the parties were domiciled or headquartered in Illinois at the time of contracting; and (3) the place of performance was Illinois. *Id.* at 1176. Moreover, despite the fact that the hazardous waste was located in Pennsylvania, the Court determined that Illinois had the "most substantial governmental interest" because the remediation of the Pennsylvania site had been completed and Illinois continued to have a "substantial interest in the interpretation of insurance contracts that were issued by an Illinois insurance company, performed in Illinois and negotiated in Illinois." *Id.* Thus, having concluded that Illinois had the most significant contacts and the most substantial governmental interest in the litigation, the district court applied Illinois law to the interpretation of the various policy provisions relating to coverage. *Id.*

In the instant case, it is undisputed that Chemetron was a diversified multi-national corporation headquartered in Chicago, Illinois, at the time the relevant policies were issued. The Home Insurance policies were issued through a broker located in Chicago, Illinois, and the Allstate/Northbrook policies were issued and delivered to Chemetron in Illinois. Moreover, Allstate's predecessor-in-interest, Northbrook, was an Illinois corpora-

to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event, the local law of the other state will be applied. Restatement (Second) Conflict of Laws § 193 (1971). However, comment (b) to § 193 provides that the "location of the risk has less significance ... where the policy covers a group of risks that are scattered throughout two or more states." Restatement (Second) Conflict of Laws § 193 comment (b) (1971).

10. According to Allstate/Northbrook, the Court should apply Pennsylvania law because it mirrors the law of Ohio and Michigan and thus there is a "false conflict" between the various bodies of law.

11. Defendant Allstate/Northbrook maintains that "there is no precedent for this Court to apply Pennsylvania law to the notice issue, but apply another state law to the pollution exclusion." (Allstate/Northbrook's brief at 8). Allstate/Northbrook, however, acknowledges that courts have "applied different states' law on an issue-by-issue basis." *Id.*

tion with its principal place of business in Illinois.

Subsequently, in November, 1977, Chemetron was acquired by Allegheny Ludlum Industries, Inc., which became Allegheny International, Inc. (AI). The headquarters of AI was located in Pennsylvania. As a result of this acquisition, the risk management department of Chemetron was disbanded and the risk management and insurance matters were transferred to the risk management department of AI by the end of the second quarter of 1978.[12]

The core dispute in this case is whether the policies issued by the defendants provide excess coverage for liabilities based upon events occurring from July 31, 1969 through July 1, 1978. During this time period, the Illinois contacts clearly predominate. Not only do they predominate, but they clearly are more significant in qualitative terms. Thus, this Court finds that Illinois has the most significant contacts with the insurance transactions. Moreover, as the Court in *Gould* recognized, Illinois has a "substantial interest in the interpretation of insurance contracts that were issued by an Illinois insurance company, performed in Illinois and negotiated in Illinois." *Id.* at 1176. Because Illinois has the most significant contacts with the insurance transactions, except for the duty to give notice, and because Illinois has a substantial interest in the interpretation of insurance contracts issued within its borders, this Court will apply Illinois law to the coverage issues.[13]

### B. Interpretation of insurance contracts

■ Under Illinois law, the insurer bears the burden of establishing the applicability of an exclusion. *Economy Fire & Casualty Co. v. Bassett,* 170 Ill.App.3d 765, 121 Ill.Dec.

481, 525 N.E.2d 539 (1988); *American States Insurance Co. v. Action Fire Equipment, Inc.,* 157 Ill.App.3d 34, 109 Ill.Dec. 258, 509 N.E.2d 1097, 1102, *appeal denied,* 116 Ill.2d 547, 113 Ill.Dec. 291, 515 N.E.2d 100 (1987). Moreover, the Court of Appeals for the Third Circuit has held that, absent a controlling decision by the state's highest court, the burden of proof on this issue should be allocated according to the traditional distinction between coverage and exclusionary clauses, which places the burden of proving coverage on the insured and the burden of proving exclusion on the insurer. *New Castle County v. Hartford Accident & Indemnity Co.,* 933 F.2d 1162, 1181–82 (3d Cir.1991) (discussing general principle in the context of Delaware law and imposing burden of proving inapplicability of exception on insurer), *cert. denied,* —— U.S. ——, 113 S.Ct. 1846, 123 L.Ed.2d 470 (1993). *Cf. Northern Insurance Co. of New York v. Aardvark Associates, Inc.,* 942 F.2d 189, 195 (3d Cir.1991) (following Pennsylvania law and allocating burden of proving applicability of exception on the insured). Therefore, the plaintiffs will bear the burden of proving that the underlying liabilities fall within the coverage provisions, while the defendant insurance companies will bear the burden of proving that the exclusions preclude coverage. In accordance with the general principle stated in *New Castle County,* the defendants' burden will include proving the nonapplicability of the sudden and accidental exception to the pollution exclusion. *New Castle County,* 933 F.2d at 1174–75; *Gould,* 822 F.Supp. at 1181–82 (Illinois law).

### 1. Occurrence

■ Defendant Home Insurance contends that it is entitled to summary judgment with

---

12. Defendant Allstate/Northbrook declares that "Pennsylvania has a significant governmental interest in Allegheny International ("AI") bankruptcy and reorganization, since AI is a Pennsylvania corporation and the bankruptcy was initiated in this state." (Allstate/Northbrook's memorandum at 6). However, it is undisputed that AI did not file for bankruptcy until February of 1988.

13. It appears that the only actual conflict between Illinois law and Pennsylvania law involves

the interpretation of the pollution exclusion and the sudden and accidental exception to that exclusion. Based on the foregoing analysis, the Court will apply Illinois law to all of the coverage issues raised in this case. To the extent that there exists conflict between the law of these jurisdictions, Illinois law should be applied. To the extent that there is not a conflict between the law of these jurisdictions, the Court will follow Illinois law for consistency.

respect to the McGean site because the undisputed facts establish that there was not an occurrence at this site, which would trigger the coverage.

The policies issued by Home Insurance provided in pertinent part:

> The term *"occurrence"* wherever used herein *shall mean an accident or a happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally result in personal injury, property damage or advertising liability during the policy period.*

The Supreme Court of Illinois has made it clear that, under this type of occurrence definition, "it is the property damage that must be unexpected or unintended." *Outboard Marine Corp.,* 154 Ill.2d 90, 180 Ill. Dec. 691, 707, 607 N.E.2d at 1220.

Upon examination of the pleadings, briefs and accompanying materials, and viewing the facts in a light most favorable to the plaintiff Chemetron, this Court finds that there are issues of material fact in dispute on this issue. Therefore, summary judgment is precluded.

### 2. Owned property exclusion

Defendant Home Insurance asserts that plaintiff Chemetron is not entitled to coverage for "clean up costs associated with the McGean sites" based upon the "owned property" provision contained in the insurance policies.

> The "owned property" provision stated:

> The term "Property Damage" wherever used herein shall mean loss of or direct damage to or destruction of tangible property *(other than property owned by the Named Insured.)*

Upon examination of the pleadings, briefs and accompanying materials, and viewing the facts in a light most favorable to Chemetron, the Court finds that there are issues of material fact in dispute on this issue. Therefore, summary judgment is precluded on this issue.

### 3. Pollution exclusion

■  The "pollution exclusion" contained in the Allstate/Northbrook policies provides:

> This policy shall not apply

> *         *         *         *         *         *

> to Personal Injury or Property Damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or bodies of water [*the pollution exclusion*]; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental [*the sudden and accidental exception*].

(Allstate/Northbrook's Exhibit B).[14] Except for those covering the years 1969 through 1972, the policies issued by defendant Home Insurance have substantially similar exclusions.

In a recent decision, the Supreme Court of Illinois explained the relationship between the "pollution exclusion" and the "sudden and accidental" exception:

> The pollution exclusion exception retriggers coverage for toxic releases which are "sudden and accidental." The policies define "accident" to include "continuous or repeated exposure to conditions." In our view, an accidental release or discharge would include, according to the policy, a gradual release or a "continuous or repeated" release. To construe "sudden" to mean "abrupt" results in a contradiction if one accepts the insurers' own definition of the term "accident." Such a construction would result in the pollution exclusion exception clause retriggering coverage for toxic releases which are "abrupt" and gradual or "continuous or repeated" releases. Clearly, under such a construction this clause would be rendered absurd. However, if "sudden" means unexpected or unintended, as it is defined by numerous dictionaries, the clause retriggers coverage

---

**14.** This precise language was contained in Allstate/Northbrook policies 63–000–946, 63–003–312, and 63–003–314. Allstate/Northbrook policy 63–002–022 contained a substantially similar provision.

for unexpected or unintended releases which are exactly the type of uncertainties or risks that an insured would want to insure against. In light of the above, the insurers' argument must fail.

In addition, in our view, it is not coincidental that one of the definitions of "sudden" is unexpected or unintended and that an element of the policies' occurrence definitions is unexpected or unintended property damage. We recognize that, in the occurrence provision, it is the property damage that must be unexpected or unintended, whereas in the pollution exclusion exception it is the toxic release which must be unexpected or unintended. However, these clauses are closely related: one refers to the source of the property damage while the other refers to the property damage itself. Generally, an unexpected or unintended release would result in unexpected or unintended property damage. We find that, when the policy is viewed as a whole, these clauses work together to convey the intent of the parties that the policy's coverage would protect the insured from unexpected or unintended releases, including those that may have been continuous.

*Outboard Marine Corp.*, 154 Ill.2d 90, 180 Ill.Dec. at 706–07 607 N.E.2d at 1219–20 (citations omitted).

Upon examination of the pleadings, briefs and accompanying materials, and viewing the facts in a light most favorable to the plaintiffs, the Court finds that there are issues of material fact in dispute with regard to the applicability of the pollution exclusion. Therefore, summary judgment is precluded on this issue.

*4. Nuclear energy liability exclusion*

In its motion for summary judgment, Allstate/Northbrook contends that Chemetron is not entitled to coverage at the McGean site because "the nuclear exclusion ... excludes all damages arising at the McGean site, since those damages result from the 'radioactive contamination of property.'" (Allstate/Northbrook's motion at ¶ 6). Plaintiffs have filed a cross-motion for summary judgment on the applicability of this exclusion.

The policies issued by defendants "contained nuclear energy liability exclusions," which read substantially as follows:

It is agreed that the policy does not apply:

I. Under any Liability Coverage, to injury, sickness, death or destruction

a. *with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association,* Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

b. *resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof,* or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

\*    \*    \*    \*    \*    \*

III. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, *if*

a. the *nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been dispersed therefrom;*

b. *the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured;* or

c. the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or

Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV. As used in this endorsement:

"*hazardous properties*" include radioactive, toxic or explosive properties;

"*nuclear material*" means source material, special nuclear material or byproduct material;

"*source material*", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"*spent fuel*" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

"*waste*" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;

"*nuclear facility*" means

(a) any nuclear reactors

(b) *any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,*

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) *any structure, basin, excavation, premises or place prepared or used for the*

*storage or disposal of waste,* and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination or property.

(Plaintiffs' Exhibits 8 and 9).

■■■ Upon examination of the pleadings, briefs and accompanying materials, and viewing the facts in a light most favorable to the defendants, the Court finds that there are issues of material fact in dispute with regard to the applicability of part I of the nuclear energy exclusion.[15] Therefore, summary judgment is precluded on this issue. However, with respect to part III of the nuclear energy exclusion, the undisputed evidence demonstrates that the "nuclear material" at the McGean site was "source material," but that the site was not a "nuclear facility" as required by part III(a) and the "source material" was not contained in "spent fuel" or "waste" as required by part III(b). (Koh affidavit at ¶¶ 13–21). Therefore, Chemetron is entitled to summary judgment regarding the applicability of part III of the nuclear energy exclusion.

### 5. Failure to meet excess insurance threshold

■■■ In an earlier Memorandum Order dated May 21, 1993, this Court entered partial summary judgment in favor of Allstate/Northbrook and Home Insurance as to

---

15. Defendants have moved for summary judgment on the applicability of part III of the nuclear energy exclusion, but they invoke part I only in opposition to the plaintiffs' motion for summary judgment. Chemetron does not dispute that it was "a named insured during the period June 30, 1967 to June 10, 1973 under a Nuclear Energy Liability Policy (Supplier's and Transporter's Form) issued by NELIA which provided limited coverage for liabilities arising out of or in

the course of transportation of nuclear material." (Chemtron's brief at 16 n. 8). However, this fact is insufficient, by itself, to establish the applicability of part I of the nuclear energy exclusion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986) (court may deny summary judgment "where there is reason to believe that the better course would be to proceed to a full trial").

the "Berlin & Farro site, the Deerfield/Summit National site, the Grow Group site, and the Liquid Disposal site," because those four sites had been "settled for sums less than $500,000." (Memorandum Order at 4 (May 21, 1993)). Defendants have now moved for summary judgment with regard to the Bio-Ecology site, Haynes site, Lowry Landfill, Maxey Flats site, Port Hope site, Northeast Hazardous Waste site, and Organic Chemical site "because these sites will not invoke [the] excess coverage." (Allstate/Northbrook's brief at 2 n. 1). While defendants emphasize the damages report prepared by Attorney Roman, this report appears to be a summary of damages to date and does not appear to state total damages for these sites. Upon examination of the pleadings, briefs and accompanying materials, and viewing the facts in a light most favorable to the plaintiffs, the Court finds that there are issues of material fact. Therefore, summary judgment is precluded on this issue.[16]

---

**16.** At the risk of stating the obvious, the Court notes that it is clear that defendants will not have a right to indemnification from the defendant insurers for the liabilities at these sites if the liabilities do not meet the policy thresholds.